**The STATE of Ohio, Appellee,**

v.

**LANG, Appellant.**

[Cite as *State v. Lang* (1995), 102 Ohio App.3d 243.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–920748.

Decided March 29, 1995.

244

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip Cummings,* Assistant Prosecuting Attorney, for appellee.

*Robert R. Hastings, Jr.,* for appellant.

*Per Curiam.*

The defendant-appellant, Richard Lang, was charged with one count of robbery and one count of theft of property having a value over $5,000 (grand theft), both of which carried a specification of a prior offense of violence, to wit, rape. A jury found him guilty on both counts. He was sentenced to ten to fifteen years on the robbery charge, and four to ten years on the theft charge. The sentences were made to run concurrently.

Lang asserts three assignments of error on appeal: (1) that the trial court erred by sentencing him on both the robbery and theft counts because they involved allied offenses of similar import, (2) that the trial court erred in permitting a police officer to testify about allegedly incriminating statements made to the police that had not been exchanged in discovery, and (3) that the trial court erred in entering convictions which were contrary to law and against the manifest weight of the evidence. We find merit in the first of these assignments but reject the second and third. The trial court's judgment is thus affirmed with respect to the findings of guilt, but the sentence is vacated and this case remanded for resentencing consistent with R.C. 2941.25.

I

On January 21, 1992, Donna Robinson was working as a teller at the Provident Bank located at 2522 Vine Street, in the Corryville section of Cincinnati, when, at approximately 2:30 p.m., a man entered the lobby. She described him as a white male, fair-skinned, with dark eyebrows, a moustache and beard, and wearing sunglasses, a brown, "yellowish-like" trench coat, a cap, and a hood over the cap. A security camera captured the man on black-and-white film. The man walked up to her window and slipped her a note, which read:

"THIS [IS] A HOLD UP.

"BE CALM

"AND NO–ONE WILL GET HURT

"MAKE IT FAST I'M

"IN A HURRY!"

According to Robinson, the man also verbally advised her that, if she hurried, no one would get hurt. Robinson handed over to the man an amount of money she described as "almost $8,000." The money was packaged in strapped fives and tens. The man stuffed the money in the pockets of his trench coat and walked quickly out of the side door. He was not apprehended.

The police investigation of the robbery produced no leads until February 3, 1992. On that day Lang entered District 5 police headquarters in Clifton and turned in a stack of ten-dollar bills that he claimed to have found near the office of his psychologist at 21 East McMillan Street. According to Lang, he had gone to the office, arrived there early and found himself in need of urinating. Not wishing to disturb the psychologist, who did not have a receptionist and was possibly with another patient, he retreated behind a privacy fence to relieve himself. There he found $1,000 in a bank wrapper with the name "D. Robinson" on it.

Lang subsequently showed the police the location next to his psychologist's office where he had found the money. At the bottom of a hill descending from the fence, next to a path, the police located clothing which fit the description of that worn in the bank robbery on January 21. In addition, two more ten-dollar bills were found on the ground by the clothing.

One of the police specialists investigating the scene became suspicious after noticing that Lang generally fit the description of the bank robber. Lang was read his rights and questioned about the robbery. Lang denied being in the Clifton area on the day of the robbery. Noticing that Lang's picture on his driver's license showed him with a beard and moustache, the police asked him when he had shaved. Lang replied that he had shaved his beard off on January 23. Lang was then transported to the Criminal Investigation Section for further questioning.

The next day, on February 4, the police returned to the Provident Bank with Lang's driver's license photograph arranged in a photographic display of six suspects, all of similar facial appearance. Robinson positively identified Lang as the robber.

The police then placed Lang under arrest, charging him with receiving stolen property. On February 5, the police arranged for Lang to be part of a lineup at

the Hamilton County Justice Center. Robinson was brought in to view the lineup and once again positively identified Lang as the robber.

Lang was subsequently charged with robbery and grand theft. After a trial by jury, he was found guilty of both offenses and sentenced as previously set forth.

## II

In his first assignment of error, Lang argues that the trial court erred in sentencing him on both counts of the indictment since robbery and theft are allied offenses of similar import. The state responds that Lang's failure to raise this objection below constitutes a waiver of the issue, and that, in any case, the two offenses are not allied offenses of similar import because, under a strict "comparison of the elements" test, commission of robbery does not necessarily result in commission of grand theft.

■ This court in *State v. Fields* (1994), 97 Ohio App.3d 337, 646 N.E.2d 866, reviewed the doctrine of plain error as it applies to allied-offense issues. As we observed in *Fields:*

"An error that is waived by failure to object will not be noticed by the court of appeals unless it is plain error. Crim.R. 52(B). * * *

"The court's power under Crim.R. 52(B) is discretionary. [*United States v. Olano* (1993), 507 U.S. —— at —— -——] 113 S.Ct. [1770] at 1778–1779 [123 L.Ed.2d 508 at 520–522]; *Long,* 53 Ohio St.2d [91] at 95, [7 O.O.3d 178 at 180] 372 N.E.2d [804] at 807, fn. 5; *State v. Craft* (1977), 52 Ohio App.2d 1, [6 O.O.3d 1, 2] 367 N.E.2d 1221, 1223; Crim.R. 52(B). * * * This court, however, previously has addressed allied-offense issues that were waived below. *State v. Jennings* (1987), 42 Ohio App.3d 179, 537 N.E.2d 685; *State v. Gordon* (March 18, 1992), Hamilton App. No. C–910375, unreported [1992 WL 52723]; *State v. Carter* (Dec. 19, 1990), Hamilton App. No. C–890787, unreported [1990 WL 209676]; *State v. Elyel* (March 21, 1984), Hamilton App. No. C–830403, unreported [1984 WL 14107]. * * * [O]ther courts of appeals have addressed waived allied-offense issues. See, generally, *State v. Morgan* (1992), 80 Ohio App.3d 150, 152–53, 608 N.E.2d 1114, 1115–16; *State v. Dehler* (May 26, 1994), Cuyahoga App. Nos. 65006, 66020, unreported [1994 WL 236298]; *State v. Ventresca* (March 26, 1993), Lake App. No. 92–L–091, unreported [1993 WL 130044]. Therefore, under Crim.R. 52(B), it is within our discretion to address the merits of an allied-offense issue." (Footnote omitted.)

In accordance with the discretionary authority recognized in *Fields,* we shall consider the merits of the allied-offense issue in the present case under a plain-error analysis. That analysis is tripartite, requiring us to determine (1) whether there was error, (2) whether it was plain error, and (3) whether the defendant

was prejudiced. *Fields, supra,* citing *United States v. Olano* (1992), 507 U.S. ——, ——, 113 S.Ct. 1770, 1777–1778, 123 L.Ed.2d 508, 518–520.

Ohio's multiple-count statute, R.C. 2941.25, provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

Interpreting R.C. 2941.25, the Ohio Supreme Court has developed a two-step analysis to determine whether offenses are allied and of similar import. The first of these steps focuses on the elements of the two offenses to determine if they correspond to such a degree that the commission of one will result in the commission of the other. *Fields, supra,* citing *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 83, 549 N.E.2d 520, 522; R.C. 2941.25. The second step inquires whether the two offenses were part of the same conduct or whether there was a separate animus for each crime. *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816.

The two offenses with which we are concerned here are robbery and theft, the latter elevated to a third-degree felony because the amount involved is over $5,000. The elements of robbery are a theft offense accompanied by the use, or threatened immediate use, of force. R.C. 2911.02. As can be seen, in order to commit robbery, one must necessarily commit, or attempt to commit, a theft.

The Ohio Supreme Court has recognized that *aggravated* robbery and *petit* theft are allied offenses of similar import. *State v. Johnson* (1983), 6 Ohio St.3d 420, 6 OBR 466, 453 N.E.2d 595. As noted in *Johnson,* the Committee Comment to R.C. 2911.01 makes clear that theft is the basic element of robbery, and that in proving the element of robbery, the underlying theft offense is also demonstrated.

Consistent, however, with its advocacy of what it calls a "strict comparison-of-the-elements test," the state argues that because the theft offense in the case *sub judice* is *grand* theft, involving a sum over $5,000, it cannot be said that the two offenses are allied. According to the logic of the state's argument, since it is theoretically possible to commit robbery for a sum less than $5,000, and to steal $5,000 or more without committing a robbery, the two offenses are not allied since one does not always result in the other.

■ We agree with the state that a fact such as a value above a certain amount which transforms the degree of the offense from a misdemeanor to a felony is, for the purpose of allocating the burden of proof, a separate element of the crime which the state must prove beyond a reasonable doubt. Compare *State v. Allen* (1987), 29 Ohio St.3d 53, 29 OBR 436, 506 N.E.2d 199, with *State v. Henderson* (1979), 58 Ohio St.2d 171, 12 O.O.3d 177, 389 N.E.2d 494. However, the "comparison of the elements" test for the purpose of determining allied offenses of similar import does not necessarily turn on whether each offense has technically a separate element. As noted by the court in *Johnson*, the first prong of the test "stresses the commonality of the elements and generally forbids cumulative punishments for both a greater and lesser included offense," but "the two offenses need not be identical in constituent elements or in actual proof in order to be the same for double jeopardy purposes." *Johnson, supra*, 6 Ohio St.3d at 421, 6 OBR at 467, 453 N.E.2d at 597. It is thus necessary to examine the statutory elements of the two charged offenses in light of the facts and circumstances under which the two crimes were committed. *Fields, supra; State v. Shirley* (May 26, 1993), Hamilton App. No. C–920535, unreported, 1993 WL 321527. As stated in the concurring opinion in *Blankenship:*

"In determining whether the two offenses are allied offenses of similar import, a comparison of the elements of the two offenses must be made. However, in making this comparison, it is not a comparison as to whether one offense cannot possibly be committed without committing the other, but rather whether the nature of the elements of the offenses is such that in some instances they may overlap, that is, that in certain instances, both crimes may be committed by the same conduct. It is not necessary that both crimes are always committed by the same conduct * * *." (Whiteside, J., sitting for Sweeney, J., concurring.) *Blankenship, supra*, 38 Ohio St.3d at 119, 526 N.E.2d at 816.

■ Distilled to its essence, the real concern of any allied-offense analysis is whether the state, by sentencing the defendant for both offenses, is, in effect, imposing multiple punishments for what is essentially one offense. *N. Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665; *State v. Thomas* (1980), 61 Ohio St.2d 254, 260, 15 O.O.3d 262, 265–266, 400 N.E.2d 897, 902. In the present case, there was only one theft. Although technically an *element* of the crime for the purposes of allocating to the state its burden of proof, the value of the property stolen does not alter the fact that Lang committed only a single theft. This theft was, moreover, under the particular facts of this case, accompanied by the threat of immediate force, thereby turning it into an act of robbery. We hold that, by examining the elements of the two crimes in the light of the particular facts of this case, the commission of the

robbery automatically resulted in commission of the theft. We hold, therefore, that the two offenses are allied on these facts.[1]

■ The next inquiry is whether the offenses involved separate conduct or were committed with a separate animus. Lang's robbery of the bank was indisputably a single course of conduct committed with a continuing animus. Thus we hold that, on the facts of record, the offenses of robbery and grand theft were allied and of similar import, that they were not committed separately or with separate animus, and that the trial court erred by sentencing Lang for both.

■ In view of the error, the next step is to determine whether such error was plain error. As we held in *Fields, supra,* although allied-offense analysis is admittedly complex, where an accused is sentenced for two crimes arising from what is indisputably a single theft, the error is plain.

■ The final inquiry, for the purposes of determining whether to validate Lang's assignment under a plain-error analysis, is whether the error was prejudicial. Although Lang's sentences on the robbery and grand theft were ordered to run concurrently, this fact alone does not render the sentencing error nonprejudicial. *Fields, supra.* As we noted in *Fields,* this court has many times held it to be prejudicial plain error to impose multiple sentences, even if the sentences are made to run concurrently, for allied offenses of similar import. *Fields, supra; State v. Burl* (Dec. 16, 1992), Hamilton App. Nos. C–920167 and C–920194, unreported, 1992 WL 380020; *State v. Brown* (Mar. 18, 1992), Hamilton App. No. C–900925, unreported, 1992 WL 52716; *State v. Gordon* (Mar. 18, 1992), Hamilton App. No. C–910375, unreported, 1992 WL 52723; *State v. Carter* (Dec. 19, 1990), Hamilton App. No. C–890787, unreported, 1990 WL 209676; *State v. Elyel* (Mar. 21, 1984), Hamilton App. No. C–830403, unreported, 1984 WL 14107. The prejudice arises from a criminal record that reveals convictions for two felonies when, in fact, the defendant has committed only one criminal act. *Fields, supra; Burl, supra.* See, also, *State v. Golston* (1994), 71 Ohio St.3d 224, 643 N.E.2d 109 (the prejudicial effect of a felony conviction on one's reputation as well as social and economic status must be considered in determining mootness).

We hold, therefore, that Lang was prejudiced by plain error, and his first assignment of error is sustained.

### III

In his second assignment of error, Lang asserts that the trial court erred by permitting a police officer to testify concerning incriminating custodial statements

---

1. Accord *State v. McGhee* (1987), 37 Ohio App.3d 54, 523 N.E.2d 864 (theft in office [R.C. 2921.41] and grand theft held to be allied offenses of similar import though each offense has a separate element [the holding of public office and a theft of $5,000 or more, respectively] ).

made by Lang, written summaries of which were not provided to the defense in discovery pursuant to Crim.R. 16(B)(1)(a)(ii). The two statements were: "If I robbed the bank, I don't remember it," and "It [the bank photograph] looks just like me, but it isn't me."

It is not disputed that written summaries of these statements were not exchanged before trial. Rather, on the morning of the second day of the trial the prosecutor informed defense counsel that he expected Police Sergeant Robert Disbennett to testify to these statements. The record reveals that there was a discussion in chambers, not transcribed, after which the trial judge indicated his intention to allow Sergeant Disbennett to testify to both statements, followed by an objection by defense counsel based on the state's failure to exchange this information in discovery.

Crim.R. 16(B)(1)(a)(i) and (ii) require the state, upon motion, to disclose to the defendant "[r]elevant written or recorded statements made by the defendant," as well as "[w]ritten summaries of any oral statement, or copies thereof, made by the defendant." In *State v. Bidinost* (1994), 71 Ohio St.3d 449, 456, 644 N.E.2d 318, 324, the Ohio Supreme Court held that Crim.R. 16(B)(1)(a)(ii) requires the prosecution to reduce a defendant's oral statements to writing, in the form of a summary, to be provided to the defense during discovery. Clearly this was not done in this case.

Crim.R. 16(E)(3) provides that:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

In *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, the court held at the syllabus:

"Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted."

On this record there is no evidence that the state's violation of Crim.R. 16(B) was willful. Second, with regard to the benefit to the defense of foreknowl-

edge of these statements, the Ohio Supreme Court has made clear that "a bald assertion to this effect is insufficient to demonstrate that the trial court committed reversible error." *State v. Wiles* (1991), 59 Ohio St.3d 71, 79, 571 N.E.2d 97, 110.

■ As for the possibility of prejudice, we note first that the second of these statements, in which Lang maintained his innocence while admitting the resemblance between himself and the robber, cannot seriously be described as inculpatory since it is, at the core, a denial of the crime. The same cannot be said, however, for Lang's statement that he could have committed the robbery and forgotten about it. This statement, given its unbelievability, is clearly inculpatory and could have had a significant impact on the jury.

In *Wiles, supra,* the court determined that in the application of the third prong of the test in *Parson,* it was significant that the "only sanction urged of the trial court * * * was the exclusion of [the] testimony," whereas Crim.R. 16(E)(3) provided for the granting of a continuance. 59 Ohio St.3d at 80, 571 N.E.2d at 110. The *Wiles* court then held that "no prejudice to a criminal defendant results where an objection is made at trial to the admission of nondisclosed discoverable evidence on the basis of surprise but no motion for a continuance is advanced at that time." *Id.* at 80, 571 N.E.2d at 111 (citing *State v. Edwards* [1976], 49 Ohio St.2d 31, 42–43, 3 O.O.3d 18, 24–25, 358 N.E.2d 1051, 1059–1060).

As in *Wiles,* counsel for the defendant in the case *sub judice* sought only the exclusion of the statement and did not ask the court for a continuance. Thus, under the authority cited above, as a matter of law no prejudice resulted from the admission of the nondisclosed statement.

■ Finally, we note that this statement was actually elicited from Sergeant Disbennett not by the prosecutor, but by defense counsel, during the following exchange:

"Q. And at all times, whether it was the first interview, the second interview, the third interview, at all times he denied that he was involved in the robbery, didn't he?

"A. He denied he was involved, but what he said, he told me he looked—

"Q. Thank you. I asked [*sic* ] that the officer not volunteer any additional information other than to answer my question.

"THE COURT: Well, to the benefit of the police officer, that appeared to me to be a somewhat open-ended question. If, in fact, you want him to answer specific questions, Mr. Kleinhaus, you're going to have to ask him specific questions that call for specific answers.

"MR. KLEINHAUS: All right.

"Q. Officer, did Richard Lang ever make an admission to you that he robbed the bank?

"A. He told me—

"Q. Yes or no, Officer.

"THE COURT: Then you can explain.

"A. He told me—

"THE COURT: You have to say yes or no.

"A. I can't say yes or no. He denied robbing the bank.

"Q. Thank you.

"THE COURT: Do you want to explain that?

"A. What he told me was, if he robbed the bank, he didn't remember doing it."

Thus, clearly whatever claim of prejudice is being advanced by Lang results from testimony elicited by his own counsel, who opened the door to it by pursuing the line of questioning in the manner that he did. Finally, it should be noted that the record does not establish when Lang made this statement. According to the police officer conducting the investigation, Lang was interviewed for several hours, from approximately 2:30 to 5:00 p.m., as a witness, not as a detainee, before he was placed under arrest. Thus the record does not establish that his statement was, as the assignment of error claims, custodial and thus the subject of a possible motion to suppress.

Lang's second assignment of error is overruled.

### IV

In his third assignment of error, Lang asserts that his convictions were contrary to law and against the manifest weight of the evidence.

We have already briefly summarized the prosecution's case against Lang. During an interview following his initial arrest, Lang told the police that on the day of the robbery, January 21, he had been with his stepson, Keith Kyle, and, after certain activities in the morning, called his girlfriend in Zanesville and stayed home the rest of the day. In a subsequent interview, according to the police, Lang changed his story, telling them that he had driven to Zanesville to visit his girlfriend, arriving there at around 4:00 p.m. The reason Lang gave for not telling the police the truth originally was his fear that his wife would find out about his girlfriend.

The police contacted Lang's stepson, Keith Kyle, and received information that Lang had in fact been in the Corryville area on January 21 to cash a check at a

separate check-cashing facility. The police testified that, when confronted with this information, Lang told them that he had simply forgotten about this excursion, and could not recall the exact time that he had cashed the check.

At trial, in addition to the testimony of Robinson and the investigating officers, the state produced the testimony of Chris Gerren, Lang's parole officer. Gerren testified that a week before Lang's arrest for the robbery Lang had been experiencing financial problems, owing back payments on his motorcycle and car, as well as owing the Hamilton County Probation Department approximately $140 and a fine from a previous case. He testified that on February 3, 1992, Lang telephoned him and advised him that he was going to pay off his probation fine, as well as make back payments on his motorcycle and car. According to Gerren, when he asked Lang how he had come up with such money, Lang told him essentially the same story he later gave the police about finding a large sum of money behind his psychologist's office. According to Gerren, although Lang wanted to use the money to pay his bills, Gerren instructed him to take the money to either District 4 or 5 police headquarters. Gerren testified that Lang took the money to District 5 that morning and brought him a receipt.

Lang did not testify in his own defense. The defense called only three witnesses: William L. Dean, chief of forensic sciences and a trace evidence examiner at the Hamilton County Coroner's Laboratory, Keith Kyle, and Lang's wife, Kathleen.

Dean testified that hair samples taken from the clothing found with the money did not match those of Lang. On cross-examination, however, Dean testified that it was possible for a person to have worn the clothing in the bank robbery and not have transferred any hairs to the fabric.

Kyle testified that he was with Lang the entire day on January 21, and that Lang did not go to the Provident Bank in Corryville during that period of time. He also testified that he went with Lang to cash a check in the amount of $20 to $30 in Corryville sometime around 4:30 or 5:00 p.m., and that afterward Lang came home, called his girlfriend, and then he and Lang went to Zanesville to visit her. Kyle testified that he could not remember if they spent the night in Zanesville, but he did recall that they were there for "a while."

On cross-examination, Kyle recalled telling the police that sometime during the day on January 21 Lang had made telephone calls to the Precision Tool Store attempting to sell some of his tools for cash in order to buy gas. Kyle also recalled telling the police that on Sunday January 26 Lang had informed him that his girlfriend had hit the lottery and was going to give him some of the money.

Lang's wife, Kathleen, testified that she was unaware of her husband's involvement with another woman. She testified that on February 1, 1992, she and Lang

had an appointment with a psychologist who was primarily treating Lang. She testified that when she arrived separately at the parking lot of the psychologist's office, Lang got out of his car and entered hers in a very excited, jittery state. She stated that Lang then informed her that he had found a thousand dollars, which he showed to her. She stated that they then both kept their appointment with the psychologist and informed him of Lang's discovery.

Kathleen Lang further testified that she had never seen the clothes worn by the robber in her home, and that she was not aware of the clothing belonging to Lang. She also testified that she had not been aware of Lang's relationship with the woman in Zanesville and had since filed for divorce.

Upon review of this evidence, the state's case previously outlined, and our own examination of the photographic and physical evidence in this case, we hold that there was competent evidence upon which the jury could have found that Lang was the man who walked into the Corryville branch of the Provident Bank on January 21, 1992, and robbed Donna Robinson, the teller, of nearly $8,000 in cash. Lang was positively identified by Robinson from a photographic display and lineup. As the prosecution argued in closing, the chances of a man bearing such a striking physical resemblance to the robber just so happening days later upon the stolen loot, under such bizarre circumstances as a need to urinate behind a privacy fence, would, in human experience, seem infinitesimal. The chances, moreover, shrink further considering Lang's coincident need for ready cash, his inconsistent description of his whereabouts on the day of the robbery, his stepson's differing version of the events of that day, and his disingenuous statement that if he had committed the robbery, he could not remember doing so.

It is well settled that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Furthermore, a judgment of conviction shall not be reversed upon appeal unless it can be said that the trier of fact lost its way or created a miscarriage of justice. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. We cannot say either on this record.

Lang's third assignment of error is overruled.

Accordingly, for the reasons set forth herein, the judgment of the court of common pleas is reversed in part with respect to the imposition of sentence only, and this cause remanded for the limited purpose of resentencing consistent with this decision.

*Judgment accordingly.*

GORMAN, P.J., HILDEBRANDT and M.B. BETTMAN, JJ., concur.