OPINION.
 I. INTRODUCTION
Defendant-appellant, Richard Joseph Klein, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of involuntary manslaughter, felonious assault, and three counts of endangering children.[1] He was convicted of those offenses following a jury trial, and the trial court sentenced him to consecutive periods of incarceration totaling thirty-one years. On appeal, Klein asserts six assignments of error. Because we find the assignments to lack merit, we affirm the judgment of the trial court.
II. FACTS
Sharon Richmond and her twelve-year-old son, Matthew, resided with Klein. Matthew was developmentally delayed and suffered from periodic seizures. Even though Matthew was twelve years of age, he was only three and one-half feet tall and weighed only sixty-five pounds.
The record indicates that Matthew also suffered periods of incontinence. Prior to January 1, 1997, Klein had disciplined Matthew for incidents of incontinence by immersing the child in a tub of cold water. During the evening of January 1, 1997, Matthew suffered another incident, and Klein took him into the bathroom while Richmond remained in another room. Approximately twenty-five minutes later, Klein emerged from the bathroom and reported to Richmond that Matthew had been accidentally burned.
Neither Klein nor Richmond sought immediate medical treatment for Matthew. Instead they treated Matthew's burns with cold, wet sheets and Noxzema skin lotion. The next day, Richmond summoned paramedics when she discovered that Matthew's breathing had become rapid and shallow. Matthew was initially taken to Children's Hospital on January 2, 1997. Later that day he was transferred to Shriners Burns Hospital. He died at Shriners eleven days later.
Matthew's treating physician at Shriners, Dr. Glenn Warden, testified that Matthew had suffered third-degree burns covering seventy-four percent of his body. Warden stated that the injuries were consistent with Matthew having been immersed in twelve inches of 140-degree water for five seconds.[2] According to Dr. Warden, Matthew died of pulmonary lung damage secondary to the burns. The doctor further opined that the delay in seeking medical treatment also contributed to Matthew's death.
Richmond and Klein had initially told the authorities that Matthew was accidentally burned while Richmond was bathing him. They maintained that Matthew turned on the hot-water faucet when Richmond momentarily left him unattended. Later, Richmond recanted this account and told investigating officers that Matthew had suffered his injuries at Klein's hands. Armed with this account, the officers accompanied Richmond to Klein's residence. Richmond's attempts to open the front door of the residence were to no avail because it had been nailed closed. The officers then encountered Klein at the rear of the residence, and he was taken into custody.
Further investigation revealed that Klein had left a note for Richmond in which he claimed that he did not intend to harm Matthew and that his injuries had resulted from an accident. Klein gave the same account to investigating officers. He stated that he had accidentally burned the child while he was cleaning him with a hose that was attached to the faucet.
Richmond ultimately entered a plea of guilty to one count of child endangering. She was sentenced to a term of incarceration for that offense.
III. DISCUSSION
In his first assignment of error, Klein urges that the lower court erred by denying his motion for a new trial, because the state had failed to provide him with exculpatory evidence. We are unpersuaded.
The Supreme Court of the United States has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution."[3] State law requires a prosecuting attorney, upon motion of the defendant before trial, to disclose to the defendant all known evidence "favorable to the defendant and material to either guilt or punishment."[4] TheBrady court spoke of such evidence as that which "would tend to exculpate" the defendant.[5] When there is a failure to disclose evidence that may be exculpatory, it "is not grounds for reversal, unless the defendant is denied a fair trial."[6] Suppression by the prosecution of exculpatory evidence violates due process only where that evidence creates a reasonable doubt as to the guilt of the accused.[7] The mere possibility that the evidence might have helped the defense does not establish "materiality."[8]
Klein alleges that the prosecution withheld two potential forms of exculpatory evidence. First, he alleges that the state failed to disclose that it had agreed to take no position concerning the sentence that Richmond would receive for her conviction, had arranged for her to remain at large on her own recognizance while awaiting trial, and had indicted her on only one count of child endangering in return for her testimony against Klein. Klein claims that he was precluded from cross-examining Richmond on these matters in order to challenge her credibility.
These allegations fail for several reasons. We first note that the only agreement between the state and Richmond that is reflected in the record is the state's agreement to take no position with respect to Richmond's sentence. Although Klein speculates that there must have also been agreements with respect to the charges brought against Richmond and the terms of her pretrial bond, the record does not demonstrate the existence of such agreements.
Moreover, the record indicates that Klein had ample opportunity to cross-examine Richmond with respect to the agreement she had made with the prosecution. During the direct examination of Richmond, the assistant prosecuting attorney asked Richmond if it were true that she had been indicted for child endangering and that the state was going to take no position at the time of her sentencing. Richmond answered in the affirmative. Thus, the terms of any agreement between Richmond and the state were placed before the jury and were subject to cross-examination. Klein has failed to demonstrate how foreknowledge of this limited agreement would have aided his ability to cross-examine Richmond.
Further, the sentence imposed in Richmond's case was committed to the discretion of the trial court.[9] While the prosecution's silence as to sentencing may be deemed a benefit to the defendant, we are not persuaded that the agreement in the instant case was so beneficial to Richmond that it, in and of itself, severely compromised her credibility.[10] In any event, the opportunity of Klein's counsel to cross-examine Richmond concerning the agreement at trial removed any potential prejudice that may have been caused by the state's failure to disclose the matter prior to trial.
Next, Klein contends that the state withheld evidence that the delay in seeking medical treatment did not contribute to Matthew's death. Klein speculates that the state must have had information to support this contention, because of statements made by the Hamilton County Prosecutor at the time of Richmond's plea. During that proceeding, the prosecutor opined that Richmond's failure to obtain earlier treatment of Matthew did not decrease his chances of survival. The state responds that the prosecuting attorney was simply in error and that the record does not support his conclusion that the delay was not a factor in Matthew's death.
We find no Brady violation in the state's alleged withholding of evidence concerning the cause of Matthew's death. Despite Klein's suggestion that there must have been an evidentiary basis for the prosecutor's position at Richmond's plea hearing, there is no indication in the record that such evidence existed. As noted above, Dr. Warner testified that the delay in seeking treatment for Matthew was a contributing factor in his death.[11] Klein has not cited any evidence to the contrary, and thus we cannot say that evidence was improperly withheld. We therefore find no violation of Klein's due-process rights, and we hereby overrule the first assignment of error.
In his second assignment of error, Klein maintains that he was denied the effective assistance of trial counsel because of counsel's failure to object to testimony regarding Richmond's statements to the investigating officers. We do not agree.
In order to establish ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonable representation and, in addition, that prejudice arose from counsel's performance.[12]
The defendant bears the burden of demonstrating ineffective assistance of counsel.[13] A claim of ineffective assistance will not lie if counsel's performance is based upon sound trial strategy.[14]
In the instant case, we find no deficiency in counsel's performance. Throughout the proceedings, Klein's defense was that Matthew's injuries were inflicted by Richmond during his absence from the residence. Richmond's statements, as they were related to the jury, demonstrated that she had initially claimed that she had accidentally burned Matthew. It was not until after the seriousness of Matthew's injuries became evident to her that Richmond implicated Klein. Thus, the initial statements were consistent with Klein's defense, and the subsequent inconsistent statements served to impeach Richmond's credibility and to cast doubt upon her trial testimony implicating Klein in the offenses. Under these circumstances, we must conclude that Klein's counsel demonstrated sound trial strategy in not objecting to the statements. The second assignment of error is overruled.
In his third assignment of error, Klein maintains that the lower court erred by overruling his motion for a new trial. He argues that his motion should have been granted on the basis of newly discovered evidence, specifically the plea agreement between Richmond and the prosecution. He further argues that the lower court erred in denying his request for a continuance so that Richmond could be returned from the penitentiary to testify about her understanding of the plea agreement. The assignment is without merit.
Crim.R. 33, governing motions for a new trial, provides, in part, the following:
(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
* * *
(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.
The decision to grant or deny a motion for a new trial is within the discretion of the trial court and will not be reversed absent an abuse of discretion.[15] The term "abuse of discretion" means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.[16]
We find no abuse of discretion in this case. First, as noted in our disposition of his first assignment of error, Klein was aware of the nature of Richmond's plea at the time of trial, and he had ample opportunity to cross-examine her regarding it. Thus, the evidence cited by Klein cannot be deemed "newly discovered" within the meaning of Crim.R. 33.
We also find no abuse of discretion in the trial court's denial of Klein's motion for a continuance so that Richmond could testify as to the plea agreement. More than three months had elapsed between the filing of Klein's motion for a new trial and the date of the hearing on the motion. Klein had more than adequate time to either obtain Richmond's affidavit or subpoena her from the institution for the hearing. Having done neither, Klein cannot now complain, at this late date, that the lower court erred by not ordering Richmond's return from the institution so that he could conduct a fishing expedition concerning her plea negotiations with the state. Finally, the record contains the affidavit of Richmond's trial counsel. In her affidavit, counsel recounts the terms of the plea. Those terms coincide with what Klein knew at the time of trial. Thus, we cannot say that Klein was prejudiced by Richmond's absence from the hearing on the motion. For these reasons, Klein's third assignment of error is overruled.
Klein's fourth assignment of error assails the lower court's imposition of consecutive sentences. He maintains that certain offenses for which he was sentenced were allied offenses of similar import.[17] Thus, he maintains, the lower court was required to impose concurrent sentences on those counts.
We first note that it is reversible error to impose even concurrent sentences for allied offenses.[18] However, because we hold that the offenses in the case at bar were not allied, we affirm the trial court's imposition of consecutive sentences. The Supreme Court of Ohio has recently revisited the method to be employed to resolve whether offenses are allied offenses.[19]
Under Rance, the court must assess, by comparing the elements of the offenses in the abstract, whether the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other."[20] If the elements do so correspond, the defendant may not be convicted of both offenses unless they were committed separately or with a separate animus.[21] However, if the elements do not so correspond, the offenses are of dissimilar import, the court's inquiry ends, and multiple convictions are permitted.[22]
Klein asserts that the felonious assault charged in count three of the indictment and the child endangering charged in counts four and six were allied offenses. We disagree. This court has previously held that felonious assault and endangering children are not allied offenses because the legislature intended to bestow special protection upon children by enacting an offense that specifically addresses the infliction of harm upon those under eighteen years of age.[23]
Furthermore, a comparison of the elements of felonious assault and felony child endangering reveal that they are not allied offenses. Although both require proof that the offender caused serious physical harm to another, the other elements of the offenses do not correspond so as to prohibit multiple convictions. As we stated in Barton, the state must prove, in a felonious-assault case, that the defendant knowingly caused serious physical harm to another,[24] whereas the culpable mental state for child endangering is recklessness. Thus, a conviction for child endangering will not necessarily result in a conviction for felonious assault.[25]
By the same token, the state may prove felonious assault without also proving child endangering. Felony child endangering as proscribed in R.C. 2919.22(B) (3) requires proof that the defendant inflicted serious physical harm as the result of corporal punishment or other physical discipline, elements that are not present in the felonious-assault statute. Felony child endangering pursuant to R.C. 2919.22(A) requires proof that the defendant acted in the capacity of parent or guardian and caused serious physical harm as a result of a violation of a duty arising from that capacity, while no such special relationship need be demonstrated to prove felonious assault. Accordingly, the elements of felonious assault and child endangering, when compared in the abstract, reveal that the offenses are not allied within the meaning of R.C. 2941.25.
Next, Klein urges that the crimes of involuntary manslaughter, as charged in count two, and child endangering, as charged in count six, were allied offenses. Again, a comparison of the elements of those offenses, in the abstract, persuades us that they are not allied offenses. A person may commit the offense of child endangering without also committing involuntary manslaughter. Involuntary manslaughter under R.C. 2903.04(A) requires the prosecution to prove that the defendant caused the death of another while committing or attempting to commit a felony, whereas child endangering under R.C. 2919.22(A) does not require a showing that the defendant caused the death of the victim.
Similarly, a person may commit involuntary manslaughter without also being guilty of child endangering. Child endangering pursuant to R.C. 2919.22(A) requires proof of a parental or similar relationship and a violation of a duty arising from that relationship, while those elements are not present in the involuntary-manslaughter statute. Therefore, we must conclude that the two offenses are not allied within the meaning of R.C.2941.25, and the fourth assignment of error is overruled.
For his fifth assignment of error, Klein argues that the lower court erred by denying his Crim.R. 29 motions for a judgment of acquittal on the felonious-assault charge. In the review of the sufficiency of the evidence to support a criminal conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[26] The standard of review for the denial of a Crim.R. 29 motion is the same as the standard of review for sufficiency.[27]
As we have already noted, the felonious-assault statute provides that no person shall knowingly cause serious physical harm to another.[28] In the case at bar, a rational trier of fact could have found Klein guilty of felonious assault. The testimony of Richmond and the statement of Klein himself indicated that Klein had caused Matthew's injuries. Though Klein claims on appeal that the evidence demonstrated that the injuries were accidental, there was evidence that Klein had given Matthew baths in the past as punishment for defecating in his pants and that, at the time of this offense, Klein intended that the bath be uncomfortable. Further, the testimony of Dr. Warden indicated that the burns sustained by Matthew were inconsistent with accidental injuries. Thus, there was ample evidence upon which the jury could have found that Klein acted knowingly,[29] and the fifth assignment of error is accordingly overruled.
In his sixth assignment of error, Klein claims that the lower court erred by admitting into evidence gruesome slides and photographs, including photographs taken following skin-graft operations on Matthew. We first note that the admission or exclusion of evidence is committed to the sound discretion of the trial court, and its rulings will not be disturbed absent an abuse of that discretion.[30] Even gruesome photographs are admissible at trial as long as their probative value outweighs the danger that unfair prejudice will be visited upon the accused.[31]
We find no abuse of discretion in the case at bar. The photographs presented to the jury, while admittedly gruesome, were relevant to demonstrate the element of "serious physical harm" with respect to the felonious-assault charge and to prove the cause of death as to the involuntary-manslaughter charge. Klein's argument that the photographs were not pertinent to any contested issue is therefore not well taken. There is no indication that the element of serious physical harm or the cause of Matthew's death were stipulated by defense counsel or that the state offered to accept any stipulations. Further, even were we to accept Klein's arguments that the introduction of the skin-graft photographs was unnecessary because the injuries were depicted in other photographs, we could not say that the trial court's decision was unreasonable, arbitrary or unconscionable. Thus, Klein's sixth assignment of error is overruled.
In his seventh and final assignment of error, Klein contends that the lower court erred by charging the jury on complicity. We disagree. If the jury had found, as Klein maintained below, that it was Richmond who had inflicted Matthew's injuries, then the jury would have been called upon to determine whether Klein was a complicitor in delaying treatment. Thus, the instruction was warranted by the facts presented to the jury.
Furthermore, we find no error in the terms of the instruction provided to the jury. In charging the jury on complicity, the court cautioned the jury that Richmond's status as a possible accomplice "may affect his or her credibility and make his or her testimony subject to grave suspicion, and require that it be weighed with great caution." Thus, the trial court took the proper precautions to ensure that Klein was not improperly convicted as an accomplice.
Accordingly, Klein's seventh assignment of error is overruled, and the judgment of the court of common pleas is affirmed.
Judgment affirmed.
Doan, P.J., and Painter, J., concur.
[1] The indictment included charges under three separate subsections of the child-endangering statute: administering excessive corporal punishment on the victim under R.C.2919.22(B) (3), torturing or cruelly abusing the victim under R.C.2919.22(B) (2), and creating a substantial risk to the safety or health of the victim by violating a duty of care under R.C.2919.22(A). The violations of subsections (B) (2) and (3) of R.C.2919.22 were charged as felonies of the second degree, because serious physical harm was alleged. The violation of R.C.2919.22(A) was charged as a felony of the third degree for the same reason.
[2] Investigating police officers measured the hot-water temperature at Klein's residence at 140 degrees.
[3] Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194,1196-1197. See, also, State v. Johnston (1988), 39 Ohio St.3d 48,529 N.E.2d 898.
[4] Crim.R. 16(B) (1) (f).
[5] Brady, supra, at 88, 83 S.Ct. at 1197.
[6] State v. Perry (1992), 80 Ohio App.3d 78, 85, 608 N.E.2d 846.
[7] Wagster v. Overberg (C.A.6, 1977), 560 F.2d 735, 739.
[8] Id. at 741.
[9]State v. Grigsby (Apr. 19, 1999), Stark App. No. 1998CA00319, unreported, jurisdictional motion overruled (1999), 86 Ohio St.3d 1404,711 N.E.2d 232, citing State v. O'Dell (1989), 45 Ohio St.3d 140,543 N.E.2d 1220.
[10] In fact, the record indicates that Richmond was sentenced to the maximum term of imprisonment for the child-endangering offense.
[11] Further, Klein was informed, in response to his discovery demand, that Dr. Warner would be called to testify at trial.
[12] Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, 2064; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus.
[13] State v. Hamblin (1988), 37 Ohio St.3d 153, 156,524 N.E.2d 476, 479.
[14] State v. Thompson (1987), 33 Ohio St.3d 1, 10-11,514 N.E.2d 407, 417.
[15] State v. Filiaggi (1999), 86 Ohio St.3d 230, 714 N.E.2d 230.
[16] State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
[17] R.C. 2941.25.
[18] State v. Lang (1995), 102 Ohio App.3d 243, 656 N.E.2d 1358.
[19] State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruling Newark v. Vazarani (1990), 48 Ohio St.3d 81,549 N.E.2d 520.
[20]Id. at 638, 710 N.E.2d at 705.
[21] Id. at 638-639, 710 N.E.2d at 705.
[22] Id. at 636, 710 N.E.2d at 703.
[23] State v. Barton (1991), 71 Ohio App.3d 455, 594 N.E.2d 702,State v. Anderson (1984), 16 Ohio App.3d 251, 475 N.E.2d 492.
[24] R.C. 2903.11.
[25] See Barton, supra, at 463-464, 594 N.E.2d at 708.
[26] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819, 825.
[27] State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[28] R.C. 2903.11
[29] We also reject Klein's argument that, had the jury believed he acted knowingly, it would have found him guilty of murder. To prove murder, the state must demonstrate that the defendant acted purposefully, a greater degree of culpability than "knowingly." See R.C. 2903.02 and 2901.22.
[30] State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus.
[31] State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, paragraph seven of the syllabus.