**ERIE INSURANCE COMPANY, Appellant, (Defendant Below)**

v.

**Ramona HICKMAN, by her Next Friend Nancy SMITH, and Nancy Smith, Individually, Appellee. (Plaintiffs Below)**

**No. 29S02–9310–CV–1180.**

Supreme Court of Indiana.

Oct. 27, 1993.

Robert A. Smith, Michael P. Bishop, Bishop Smith Bishop & Bemenderfer, Indianapolis, for appellant Erie Ins. Co.

Max D. Rynearson, Rynearson & Associates, Indianapolis, for appellees Ramona Hickman and Nancy Smith.

Henry J. Price, Gerald W. Mayer, Price & Barker, Indianapolis, for amicus curiae Indiana Trial Lawyers Ass'n.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

We grant transfer to reaffirm the existence of a duty that an insurer deal in good faith with its insured, and to recognize a cause of action in tort for the breach of that duty.

In this case, Ramona Hickman and Nancy Smith (Plaintiffs–Appellees below) filed a first-party claim against Erie Insurance Company (Defendant–Appellant below). Plaintiffs sought a recovery for the breach of an insurance contract and for punitive damages because Erie denied their claims. Judgment was entered on the jury's verdict awarding both compensatory and punitive damages. Erie appealed the award of punitive damages on the grounds that there was insufficient evidence.

In the original appeal, a majority of the Court of Appeals reversed the award of punitive damage. *Erie Ins. Co. v. Hickman* (1991), Ind.App., 580 N.E.2d 320. We granted transfer and remanded for reconsideration because the Court of Appeals applied an erroneous standard of review. *Erie Ins. Co. v. Hickman* (1992), Ind., 605 N.E.2d 161. On remand, the Court of Appeals again reversed the award of punitive damages on the grounds that punitive dam-

ages were not recoverable in a breach of contract action. *Erie Ins. Co. v. Hickman* (1993), Ind.App., 610 N.E.2d 283. Plaintiffs seek transfer from that decision.

The basis for the second reversal of the punitive damage award in the Court of Appeals was our decision in *Miller Brewing Co. v. Best Beers of Bloomington, Inc.* (1993), Ind., 608 N.E.2d 975. In *Best Beers*, we held that to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded. *Id.* at 984. Our intent in *Best Beers* was to prohibit the recovery of punitive damages, which is a tort remedy, where no tort had been established.

Before our decision in *Best Beers*, dicta in *Vernon Fire & Cas. Ins. Co. v. Sharp* (1976), 264 Ind. 599, 608, 349 N.E.2d 173, 180, suggested that it was appropriate for an insured to recover punitive damages from an insurer when the insurer's breach of the insurance contract was accompanied by a serious wrong, tortious in nature. Thereafter, Indiana courts declined to recognize the existence of a separate tort remedy where an insurer failed to act in good faith because *Vernon Fire* allowed the substantial equivalent. *See, e.g., Liberty Mutual Ins. Co. v. Parkinson* (1985), Ind. App., 487 N.E.2d 162, 165, where the court wrote that "[d]ue to our development of this special contractual remedy which affords the insured a more generous measure of damages, we have found no reason to adopt bad faith as an independent tort in this State, and we see no need to adopt such an action now."

Our decision in *Best Beers* eliminated this "special contractual remedy." However, the contract at issue in *Best Beers* did not involve insurance and, as a result, we did not address the question of whether a tort remedy was available to an insured when the insurer fails to fulfill duties imposed upon it by law.

■ It is axiomatic that tort obligations arise, not from an agreement between the parties, but by operation of law.

*Webb v. Jarvis*, (1991), Ind., 575 N.E.2d 992, 995; *Peru Heating Co. v. Lenhart* (1911), 48 Ind.App. 319, 326, 95 N.E. 680, 683 ("a tort denotes an injury inflicted otherwise than by a mere breach of contract; ... a tort is one's disturbance of another in rights which the law has created, either in the absence of contract or in consequence of a relation which a contract has established between the parties.") Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. *Vernon Fire*, 264 Ind. at 609, 349 N.E.2d at 181; *Wedzeb Enterprises v. Aetna Life & Cas. Co.* (1991), Ind.App., 570 N.E.2d 60, 63; *Liberty Mutual v. Parkinson*, 487 N.E.2d at 164. Whether breach of this duty constitutes a tort involves a judicial balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis*, 575 N.E.2d at 995.

■ Clearly, a relationship exists between an insurer and its insured because they are in privity of contract. However, the existence of a contract, standing alone, does not give rise to the required "special relationship" to support imposition of a tort duty. Rather, it is the unique character of the insurance contract which supports the conclusion that there is a "special relationship." This contractual relationship is at times a traditional arms-length dealing between two parties, as in the initial purchase of a policy, but is also at times one of a fiduciary nature, *see, e.g., Richey v. Chappell* (1992), Ind., 594 N.E.2d 443, 447 (statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are privileged from disclosure by the attorney-client privilege), and, at other times, an adversarial one, as here in the context of a first-party claim. Easily foreseeable is the harm that proximately results to an insured, who has a valid claim and is in need of insurance proceeds after a loss, if good faith is not exercised in determining whether to honor that claim. *See, e.g., Vernon Fire*, 264 Ind. at 609, 349 N.E.2d at 181.

Given the *sui generis* nature of insurance contracts, then, we conclude that it is in society's interest that there be fair play between insurer and insured. These factors, coupled with our return to the rule of no punitive damages in contract cases, leads us to conclude that recognition of a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith is appropriate.[1]

▮ We need not determine the precise extent of that duty today.[2] However, we make these general observations. The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim. Neither do we need to decide the precise nature and extent of damages recoverable in such an action. In tort, all damages directly traceable to the wrong and arising without an intervening agency are recoverable. *Symon v. Burger* (1988), Ind.App., 528 N.E.2d 850, 852. By contrast, the measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed. *Indiana & Mich. Elec. Co. v. Terre Haute Industries, Inc.* (1987), Ind.App., 507 N.E.2d 588, 601; *Indiana University v. Indiana Bonding & Surety Co.* (1981), Ind.App., 416 N.E.2d 1275, 1288. Nonetheless, in most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action.

1. We note that a majority of states also recognize such a right, either by judicial decision or by statute. The following jurisdictions recognize a cause of action in some form for the breach of the duty to exercise good faith in first-party litigation: *Chavers v. National Sec. Fire & Casualty Co.,* 405 So.2d 1, 6 (Ala.1981); *State Farm Fire & Casualty Co. v. Nicholson,* 777 P.2d 1152, 1155–57 (Alaska 1989); *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 733 P.2d 1073, 1079–80 (1987), *cert. denied* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177; *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1274 (Colo.1985); *Grand Sheet Metal Prods. Co. v. Protection Mut. Ins. Co.,* 34 Conn. Supp. 46, 375 A.2d 428, 429–30 (1977); *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 369 (Del.Super.1982); *White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 730 P.2d 1014, 1016–18 (1986); *Dolan v. Aid Ins. Co.,* 431 N.W.2d 790, 794 (Iowa 1988); *Curry v. Fireman's Fund Ins. Co.,* 784 S.W.2d 176, 178 (Ky.1989); *Braesch v. Union Ins. Co.,* 237 Neb. 44, 464 N.W.2d 769, 773–74 (1991); *United States Fidelity & Guar. Co. v. Peterson,* 91 Nev. 617, 540 P.2d 1070, 1071 (1975); *Chavez v. Chenoweth,* 89 N.M. 423, 553 P.2d 703, 709 (1976); *Dailey v. Integon Gen. Ins. Corp.,* 75 N.C.App. 387, 331 S.E.2d 148, 154 (1985); *Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Ins. Co.,* 279 N.W.2d 638, 643 (N.D.1979); *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 275, 6 OBR 337, 339, 452 N.E.2d 1315, 1319 (1983); *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904–5 (Okla.1977); *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 319 (R.I.1980); *Champion v. United States Fidelity & Guar. Co.,* 399 N.W.2d 320, 322 (S.D.1987); *Aranda v. Insurance Co. of N. America,* 748 S.W.2d 210, 211 (Tex.1988); *McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855, 858 (Wyo.1990). In other jurisdictions, statutory causes of action have been created to allow a recovery for the failure to act in good faith. Col.Rev.Stat. § 10–3–1113; Fla.Stat. § 624.155; Ga.Code Ann. § 33–4–6; Ill.Rev.Stat. Ch. 121½, ¶ 262; La.Rev.Stat.Ann. § 22:1220; Mass.Gen.L. Ch. 93A, § 9; Mont.Code Ann. § 33–18–242; 42 Pa.Cons.Stat. § 8371; and R.I.Gen.Laws § 9–1–33.

   Ind.Code Ann. § 27–4–1–4.5 (West 1993) specifies certain "unfair claim settlement practices," but provides no private cause of action. Ind. Code Ann. §§ 27–4–1–5.6 and 27–4–1–6. (West 1993).

2. The subject of an insurer's duty to exercise good faith is the subject of numerous cases, articles and treatises. *See, e.g., John C. McCarthy, Recovery of Damages for Bad Faith* (5th ed. 1990); *Stephen S. Ashley, Bad Faith Actions, Liability and Damages* (1984 and Supp.); Daniel S. Bopp, *Tort and Contract in Bad Faith Cases: Is the Honeymoon Over?* 59 *Defense Counsel Journal* 524 (1992). Although the majority of states recognize a cause of action in tort in the context of third-party claims and a lesser number for first party claims, *see* footnote 1, there is no uniform approach among individual states. Given the variety of ways in which tort claims for the failure of the insurer to exercise good faith may arise, *see, e.g., McCarthy* § 5:045:22 and § 3:02 though 3:13, it is neither necessary nor prudent for us to fully define the parameters of the tort in this opinion.

We also note that this new cause of action does not arise every time an insurance claim is erroneously denied. For example, a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith. This is so even if it is ultimately determined that the insurer breached its contract. That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana. *Vernon Fire*, 264 Ind. at 609–10, 349 N.E.2d at 181; *Indiana Ins. Co. v. Plummer Power Mower* (1992), Ind. App., 590 N.E.2d 1085, 1093; *CIGNA–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033, 1036; *Town & Country Mutual Ins. Co. v. Hunter* (1984), Ind.App., 472 N.E.2d 1265, 1268; *Hoosier Ins. Co. v. Mangino* (1981), Ind. App., 419 N.E.2d 978, 982; *First Fed. Sav. and Loan Assoc. v. Mudgett* (1979), Ind. App., 397 N.E.2d 1002, 1008. As the Court wrote in *Vernon Fire:*

> It is evident that the exercise of [the right to disagree as to the amount of recovery] may directly result in the intentional infliction of temporal damage, including the damage of interference with an insured's business (which an insured will undoubtedly consider to be oppressive). The infliction of this damage has generally been regarded as privileged, and not compensable, for the simple reason that it is worth more to society than it costs, i.e., the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable.

264 Ind. at 609–10, 349 N.E.2d at 181. Similarly, the lack of diligent investigation alone is not sufficient to support an award. *See Continental Cas. Co. v. Novy* (1982), Ind.App., 437 N.E.2d 1338. On the other hand, for example, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty. *See, e.g., Town & Country Mutual*, 472 N.E.2d at 1268; *Hoosier Ins. Co. v. Mangino*, 419 N.E.2d at 983.

Thus, an insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries.

### *Punitive Damages*

As noted previously, Indiana law developed a rule which permitted an insured, under certain circumstances, to seek punitive damages in an action for the breach of an insurance contract. Although our holding in *Best Beers* prohibits such a recovery in a breach of contract action, the recognition of an independent tort for the breach of the insurer's obligation to exercise good faith provides the tort upon which punitive damages may be based. Nonetheless, just as a jury's determination that a claim was, in retrospect, incorrectly denied is not sufficient to establish a breach of the duty to exercise good faith, proof that a tort was committed is not sufficient to establish the right to punitive damages. *Indiana Ins. v. Plummer*, 590 N.E.2d at 1094.

The standard for awarding punitive damages for the commission of a tort remains unchanged. Punitive damages may be awarded only if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future." *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137–38. Thus, the mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages.

### *Plaintiffs' Claim*

Because this case came before us on the issue of punitive damages, we first consider Erie's assertion that the evidence was

insufficient to support the award of punitive damages.

■ Our standard of appellate review for sufficiency on the issue of punitive damages was set forth in *Bud Wolf Chevrolet:* The court imposes neither greater judicial scrutiny nor lesser deference to jury determinations than in review of other sufficiency questions. 519 N.E.2d at 137. We will affirm a judgment of punitive damages if, considering only the probative evidence and the reasonable inferences supporting it, without reweighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence. *Id.*

■ Accordingly, we examine the evidence presented at trial. The claim arose when, on March 24, 1986, in Indianapolis, Ramona Hickman was driving an automobile owned by her mother, Nancy Smith. Hickman was travelling eastbound on 34th Street attempting to make a left turn onto Sherman Drive. As Hickman turned left at the intersection, there was a collision between the automobile she was driving and an automobile driven by Gregory Davis, who was travelling westbound on 34th Street.

Smith's vehicle was insured by a policy issued by Erie, which provided only liability and uninsured motorist coverage. With respect to the uninsured motorist coverage, Erie promised to "pay damages that the law entitled [its insured] or [its insured's] legal representative to recover from the owner or driver of an uninsured motor vehicle." Thus, under Indiana's Comparative Fault Act, Ind.Code Ann. §§ 34-4-33-1 through 34-4-33-12 (West Supp.1992), if Hickman was more than fifty per cent at fault, Hickman would not be legally entitled to recover from the uninsured motorist, and therefore, the insurance contract created no obligation for Erie to pay uninsured motorist benefits.

Smith reported the accident to Erie. In its initial written acknowledgement of receipt of Smith's claim, Erie indicated that Smith's report did not indicate any liability on her part. Davis indicated to everyone that he was insured with another insurance company.

Smith's claim was assigned to an adjuster who conducted an investigation. The adjuster spoke with Hickman, Hickman's friend Wilkes, and Davis, and reviewed two police reports. This investigation revealed that at the scene of the accident, Hickman informed police that she had completed her left turn when the traffic signal was yellow. In subsequent statements and at trial, Hickman indicated that she completed her turn after the light had turned red. Davis indicated that the light was yellow when he entered the intersection and that he believed Hickman would wait for him to clear the intersection before making her turn. Wilkes was driving another automobile and had completed a left turn onto Sherman immediately in front of Hickman. He indicated that the traffic signal had just turned yellow as he made his turn. He did not observe the color of the light at the time of the collision. The initial police report indicated that Davis was primarily at fault for the collision. An amended report indicated that Hickman was primarily at fault.

Early in the investigation, when everyone involved believed that Davis was insured, the adjuster advised Smith to pursue her claim against Davis's insurer because Smith's policy provided no coverage if Davis was insured. Then, in April, 1986, Smith obtained information which led her to believe that Davis was uninsured. She reported this information to Erie requesting reimbursement under her uninsured motorist coverage. The adjuster's initial investigation into this issue consisted of checking Davis's driver license record, police report and registration, all of which suggested that he was, in fact, insured. The adjuster believed that if Davis had been uninsured, his license would have been suspended as a result of this accident. There had been no suspension. There was no direct contact with the insurance company through whom Davis claimed to be insured. More than a year passed before Erie confirmed that, in fact, Davis had been uninsured at the time of the collision.

In the meantime, after the investigation into the facts of the collision was completed, the adjuster concluded that Hickman was more than 50% at fault for the accident. Based on this determination, the adjuster advised Smith's counsel in April, 1986, that the Erie policy would not pay the uninsured motorist claim. Erie paid Davis for his property damage claim and obtained a release barring any further claim against Smith for property damage.

Smith testified that she chose to purchase only liability and uninsured motorist coverage because of the age of her car. She was unaware that Davis could have sued her, even if he was uninsured. Smith was upset with Erie's handling of the claim because of its refusal to verify that Davis was uninsured. She was also upset because Erie refused to pay her uninsured motorist claim. It was her understanding that even if the accident had been entirely the fault of her daughter, so long as the other driver was uninsured, her uninsured motorist coverage would have covered her damages. No one from Erie explained this portion of the policy to her at the time she purchased the policy, but she never requested an explanation. Additionally, her lawyers never advised her that her understanding was incorrect. The adjuster advised Smith of the meaning of the policy at the time the claim was denied.

Smith also asserted at trial that in October, 1987, Erie wrongfully cancelled her policy for nonpayment. In support of this, she presented copies of cancelled checks and testified that she never received notices concerning nonpayment or the pending cancellation. Erie produced copies of cancellation notices indicating that Erie sent them to Smith. No proof was presented concerning whether Smith made timely periodic payments in the correct amount. Nor was any proof presented concerning any damages Smith sustained as a result of the cancellation.

In July, 1986, Smith's counsel informed Erie that Smith wanted arbitration of her uninsured motorist claim, as provided under the policy. There was no further contact between Erie and Smith regarding this claim for a period of fourteen months, during which time the adjuster closed the file. Smith informed Erie of her choice for arbitrator in September, 1987. Arbitration never proceeded. Instead, Smith initiated this action in March, 1988.[3]

Counts I and II sought recovery against Davis for Hickman's personal injuries and Smith's property damage; Count III alleged that Erie had breached its contract of insurance by failing to pay under the uninsured motorist coverage; Count IV alleged that Erie acted in bad faith and requested punitive damages. Davis was found in default, and judgment was entered against him.

At the conclusion of the evidence, the trial court denied Smith's motion for judgment on the evidence on the breach of contract count, and also denied Erie's motion for judgment on the evidence relative to the punitive damage count.

The jury returned a verdict in favor of Hickman and Smith and against Erie. Both plaintiffs were awarded the full amount of compensatory damages they requested. Hickman was awarded compensatory damages in the amount of $85.75 and punitive damages in the amount of $1,000. Smith was awarded compensatory damages in the amount of $2046.97 for the damage to her vehicle, the towing charge, the cost of temporary transportation, and interest she incurred on a loan she obtained to have her car repaired at her own expense, and punitive damages in the amount of $10,000.

---

**3.** Concerning arbitration, the policy provided in part:

Disagreement over the legal right to recover damages or the amount of damages will be settled by arbitration.

After written demand for arbitration by either party, each party will select an arbitrator. These two will select a third. If no selection is made within 30 days, either party can request the selection be made by a court having jurisdiction.

The trial court ruled that Erie had waived mandatory arbitration. That ruling was not appealed.

Based on the evidence in this record favorable to the judgment, we are obliged to conclude that the jury could not reasonably find by clear and convincing evidence that Erie acted maliciously, fraudulently, oppressively or with gross negligence in denying Smith's uninsured motorist claim. We begin by noting that the sole issue on the insurance claim was whether Erie were obligated to pay Smith under the terms of the insurance policy. If Erie was so obligated, the payment to Davis did not remove that obligation. The policy did not require Smith's consent before payment could be made to Davis.

■ The only dispute in the evidence at trial was whether Hickman was primarily at fault for the accident. The verdict makes it clear that the jury ultimately disagreed with Erie's conclusion that Hickman was more than 50% at fault for the accident.[4] Nonetheless, the record contains clear evidence that there was a rational, principled basis for the denial of the claim. Erie had information from witnesses and the police reports indicating that it was Hickman, not Davis, who failed to yield the right-of-way at the intersection. These are sources of information upon which the adjuster had a right to rely in reaching her determination. As such, the denial of the claim was made in good faith. That such a decision was ultimately found to be incorrect by a jury, does not, standing alone, establish that the denial was not made in good faith. Accordingly, after considering only the probative evidence and the reasonable inferences supporting it, and without reweighing evidence or assessing witness credibility, we conclude that a reasonable jury could not find by clear and convincing evidence that Erie acted with the malice, fraud, gross negligence, or oppressiveness necessary for the imposition of punitive damages.

■ As to the issue of cancellation of the policy seventeen months after this accident, we similarly hold that Smith has not sustained her burden of proving an entitlement to punitive damages. She presented no evidence that the cancellation caused her any damages. Without compensatory damages, there can be no punitive damages. *Sullivan v. American Cas. Co. of Reading, Pa.* (1992), Ind., 605 N.E.2d 134, 140.

■ One question remains: Are plaintiffs entitled to a new trial because we have recognized a new cause of action? Under the facts of this case, we find that they are not. In prosecuting their breach of contract claim, plaintiffs had a full opportunity to present evidence of any compensatory damages that they sustained as a result of Erie's denial of their insurance claim. Because the jury awarded plaintiffs the full amount of compensatory damages that they requested, there is nothing to be gained by a new trial on a different theory.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, reverse the award of punitive damages and affirm the award of compensatory damages.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.

---

4. Although the default judgment against Davis determined the percentages of fault as between Hickman and Davis, that judgment could not be used to collaterally estop Erie from litigating the percentages of fault for purposes of the uninsured motorist claim. *See Tofany v. NBS Imaging Systems, Inc.* (1993), Ind., 616 N.E.2d 1034, 1038; *Sullivan v. American Casualty* (1992), Ind., 605 N.E.2d 134, 139. Therefore, both sides presented evidence about the relative fault at trial.