**Donald R. ANSERT, By and Through his Guardian, Joan A. ANSERT, and Joan A. Ansert, Appellants–Plaintiffs,**

v.

**William Keith ADAMS, Jr. and Federal Insurance Company, Appellees– Defendants.**

No. 10A01–9609–CV–299.

Court of Appeals of Indiana.

April 14, 1997.

Craig W. Graham, Jeffersonville, for Appellant.

Donald J. Graham, Paul A. Bokota, Karl L. Mulvaney, Bingham Summers Welsh & Spilman, Indianapolis, for Appellee Federal Insurance Co.

**OPINION**

HOFFMAN, Judge.

Appellants-plaintiffs Donald R. Ansert, through his wife as his guardian, Joan Ansert, appeal the summary judgment entered in favor of Federal Insurance Company on the Anserts' claims for compensatory and punitive damages against Federal for the tortious breach of its duty to deal in good faith and for conversion. The facts relevant to review are recited below.

In April 1992, Donald, who was president and owner of Ansert Mechanical Contractors, suffered catastrophic personal injuries in a head-on automobile collision caused by the drunk driving of William Keith Adams, Jr. Medical bills at the time of the underlying proceedings approximate $800,000. Donald's brain injuries have required his institutionalization which costs in excess of $10,000 per month. As yet, Donald's total damages have not been determined. Donald is married and has five children. Adams' automobile insurance policy for liability had a limit of $100,-000.

Donald was insured under two separate insurance policies issued by Federal. The first was a business automobile liability policy with $1,000,000 in uninsured/underinsured coverage. The second policy was for worker's compensation benefits through Donald's business.

Several disputes have arisen between the Anserts and Federal. One dispute involved interpretation of the underinsured coverage provided by the business automobile policy. Another dispute developed regarding whether Donald's injuries were work-related and, thus, whether they were covered under worker's compensation. In separate actions, the disputes have been litigated to the point of a previous appellate court decision and at the worker's compensation board level.

With respect to the first dispute, Federal argued that the underinsured motorist endorsement contained a provision which reduced the limit of underinsured motorist coverage by any amount Ansert might recover from worker's compensation. Ultimately, Federal paid Donald the $1,000,000 policy limit under the underinsured motorists provision and obtained subrogation rights to the $100,000 coverage provided by Adams' insurer. Federal argued that payment of the $1,000,000 policy limit required Donald to hold in trust for Federal any worker's compensation benefits he might ultimately be awarded up to the $1,000,000 policy limit of the automobile policy. Federal obtained summary judgment against the Anserts with respect to its interpretation of the insurance policy. The Anserts appealed. In a memorandum decision, this Court affirmed summary judgment in part, holding that Federal had satisfied its policy limit and had obtained subrogation rights to the proceeds under Adams' policy by paying the Anserts $1,000,-000. *Ansert v. Federal Insurance Company,* Ind.App. No. 10A01–9409–CV–314 (memorandum decision June 2, 1995). However, summary judgment was reversed in part. It was determined that the worker's compensation reduction provision was ambiguous and was to be construed against Federal. *Id.* As a result, the worker's compensation award was to be applied to reduce the Anserts' total

compensatory damages, not the $1,000,000 limit of the automobile policy.

In the instant proceedings, the Anserts claim Federal tortiously breached its duty to deal in good faith stemming from settlement negotiations in 1993. After Federal paid the Anserts' $100,000 to secure its subrogation rights, Federal attempted to settle the balance of its liability under the business automobile policy by offering the Anserts an additional $950,000 contingent upon receiving $50,000 from Adams' insurer as partial reimbursement of it subrogation claim. In effect, Federal was offering the policy limit of $1,000,000 computed as $100,000 + 950,000 − $50,000 = $1,000,000. The settlement offer also contained the following provision:

> In making this settlement, Federal Insurance Company is waiving the set off it is entitled to under [the worker's compensation reduction provision of the policy] and will require a waiver, release and indemnity agreement from the Anserts for any claim for worker's compensation benefits that may be brought by or on behalf of Donald Ansert or anyone or entity claiming reimbursement under a theory of worker's compensation from Federal Insurance Company or any other company allied with it.

As it now appears, the Anserts would have forgone over one million dollars in worker's compensation benefits had the 1993 offer been accepted.

The Anserts' claim of bad faith rests on the argument that, because it was reasonably clear that the damages would exceed $1,000,-000, Federal was obligated to tender the $1,000,000 limit of the underinsured coverage of the business automobile policy with no strings attached. Thus, the Anserts argue that Federal's offer of the policy limit of the business automobile policy to influence the settlement of the separate worker's compensation policy claim constituted bad faith as violative of IND. CODE § 27–4–1–4.5(13) (1991 Supp.) which lists the following unfair settlement practice:

> Failing to promptly settle claims, where liability has become reasonably clear, under one (1) portion of the insurance policy coverage in order to influence settlements

under other portions of the insurance policy coverage.

The trial court granted Federal's motion enjoining the Anserts from conducting discovery on the bad faith claim. Ultimately, the trial court granted Federal's motion for summary judgment on the bad faith and conversion claims. This appeal ensued. Additional facts are supplied as necessary.

As restated, the Anserts present one issue on appeal: whether the trial court erred in granting summary judgment in favor of Federal on the issue of bad faith.

Review of a ruling on summary judgment requires this Court to implement the same standard used by the trial court. This Court must liberally construe all designated evidentiary matter in favor of the non-moving party and resolve any doubt against the moving party. Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. Where material facts are not in dispute, the issue is the application of the law to the facts. *Fidelity Financial Services v. Sims,* 630 N.E.2d 572, 574 (Ind. Ct.App.1994).

In reaffirming the duty of an insurer to deal in good faith with its insured and recognizing a cause of action in tort for breach of that duty, our supreme court in *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 520 (Ind.1993) also noted that a cause of action will not arise every time an insurance claim is denied. Regarding the evidence necessary for an award of punitive damages, the court stated:

> The standard for awarding punitive damages for the commission of a tort remains unchanged. Punitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future.'

*Id.* at 520.

The predicate compensatory damages necessary to any award of punitive damages and the rigorous standard for such an award must be underscored. *See id.* at 520–523. Here, the Anserts contend that after liability became reasonably clear as to the underinsured motorist coverage up to the policy limits of $1,000,000, Federal never made an unconditional offer of the limits. According to the Anserts, all offers were conditioned upon complete release of Federal, including the worker's compensation claim either implicitly or explicitly. Hence, the Anserts allege compensatory damages for the time period when the reasonably ascertainable sum was withheld by Federal and for the interest thereon. The Anserts have alleged compensatory damages which could support an award of punitive damages.

The Anserts contend it is premature to find as a matter of law that they cannot prove by clear and convincing evidence that Federal acted with gross negligence or oppressiveness "which was not the result of a mistake of fact or law, honest negligence, or other human failing" thereby demanding an award of punitive damages to deter such conduct in the future. *See id.* at 520. However, the Anserts' ability to prove their claim is seriously called into question given that: 1) a good faith dispute existed regarding interpretation of the worker's compensation reduction provision; 2) Federal substantially prevailed on the previous appeal, including matters such as the Anserts' insistence on stacking the policy limits for separate policies when anti-stacking provisions unambiguously appeared in the policies; and 3) the Anserts could have lost, but did not due to rejection of the settlement offer, the substantial amount of worker's compensation benefits to which Donald may be entitled.

In essence, the Anserts ask that one portion of Federal's conduct be viewed in a vacuum to find that Federal acted in bad faith. The parties' course of dealing appears to be substantially in good faith or at least in an equally contentious manner.

The Anserts rely on a portion of Federal's proffered settlement as evidence that Federal sought to deal unfairly as proscribed within the unfair claim settlement practices statute. While a violation of the statute would necessarily offer some evidence of bad faith, such a showing would not, standing alone, provide the evidence necessary for imposition of punitive damages as outlined in *Eerie.* *Cf. McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 867–868 (7th Cir.1994) (a good faith dispute as to validity of claim or amount of claim would not supply grounds for recovery in tort for breach of duty to deal in good faith even if ultimately determined that insurer breached contract).

Here, the established facts foreclose the Anserts' ability to sustain their burden under the standard for awarding punitive damages. Accordingly, the trial court did not err in granting summary judgment as a matter of law. Thus, any potential error in enjoining discovery cannot constitute reversible error.

The judgment of the trial court is affirmed.

Affirmed.

BAKER, J., concurs.

ROBERTSON, J., dissents with separate opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent. The Anserts' properly designated evidence establishes that, although Federal's liability for the limit of the automobile policy had become reasonably clear, Federal nevertheless made its offer to pay those proceeds conditional upon Anserts' release of Federal from any liability it may have under the worker's compensation policy—additional liability which the majority concedes may amount to more than $1,000,-000. This precise conduct has been identified and prohibited as a bad faith practice under I.C. 27-4-1-4.5(13) (Insurance companies may not delay the settlement of a claim under one insurance policy to influence a settlement under other insurance coverage). While the violation of the statute may not be dispositive of whether the Anserts can prove their case or establish their entitlement to punitive damages, the Anserts have nevertheless established a genuine issue of materi-al fact with respect to whether the alleged bad faith settlement offer made by Federal constituted a tortious breach of its duty to deal with its insured in good faith which was summarized in *Nelson v. Jimison,* 634 N.E.2d 509 (Ind.Ct.App.1994), as follows:

The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation *includes the obligation to refrain from making an unfounded refusal to pay policy proceeds, causing an unfounded delay in making payment, deceiving the insured, or exercising any unfair advantage to pressure the insured into settlement of his claim.* The insurer does not necessarily breach its duty of good faith every time it erroneously denies an insurance claim; a good faith dispute about the amount of a claim will not supply the basis for recovery under the theory that the insurer tortiously breached its duty to exercise good faith with respect to its insured.

Moreover, even if the jury determines that the insurer committed a tortious breach of its duty to exercise good faith, the right of the insured to punitive damages is not automatic. Punitive damages may be awarded only if there is clear and convincing evidence that the insurer acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake or other human failing.

*Id.* at 512 (Emphasis added; citations to *Erie Insurance Company v. Hickman by Smith,* 622 N.E.2d 515, 518–20 (Ind.1993) omitted).

The disputes between Federal and Ansert over the interpretation of the anti-stacking and the worker's compensation reduction clauses in the automobile policy are truly irrelevant. That Federal and the Anserts may have had good faith disputes (or were equally contentious) with respect to these other issues does not somehow excuse Federal from promptly paying its share of the Anserts' underinsured motorist coverage once its liability for that amount became reasonably clear.

Moreover, in the earlier appeal, our resolution of the dispute over the worker's compensation reduction clause against Federal was

based on our supreme court's 1992 decision in *Tate v. Secura Insurance*, 587 N.E.2d 665 (Ind.1992), which involved policy language virtually identical to the language at issue in the Federal policy. *See Ansert v. Federal Insurance Company*, Ind.Ct.App. No. 10A01–9409–CV–314 (1994), *trans. denied.* Thus, a reasonable fact-finder in the present case could easily conclude that Federal, at the time of the allegedly bad-faith settlement offer in 1993, was well aware 1) that the *Tate* decision had been decided adversely to its position; 2) that Federal could face substantial liability under Anserts' workers compensation policy in addition to the liability faced under the automobile policy; and therefore, 3) that Federal was motivated by dishonest purpose, moral obliquity, or furtive design when it included the requirement that its payment of the automobile policy proceeds be conditioned upon the Anserts' release of any claim for worker's compensation benefits they would have been entitled to under the other Federal policy. *See Johnston v. State Farm Mutual Automobile Insurance Company*, 667 N.E.2d 802, 805 (Ind.Ct.App.1996) (Bad faith amounts to more than bad judgment or negligence; it involves dishonest purpose, moral obliquity, or furtive design), *trans. denied.*

The majority concedes that a bad faith delay in the payment of policy proceeds would support an award of compensatory damages, which in turn would support an award of punitive damages. (Slip. op. p. 841). Therefore, I cannot understand how the majority can affirm summary judgment on either claim. Again, as noted in *Nelson*, 634 N.E.2d 509:

> Summary judgment must be denied if the resolution hinges upon state of mind, credibility of the witnesses, or the weight of the testimony. Mere improbability of recovery at trial does not justify the entry of summary judgment against the plaintiff. On a motion for summary judgment, the evidence must be construed in favor of the nonmovant, and any doubt about the existence of a genuine issue of material fact must be resolved against the moving party.

*Id.* at 512 (Citations omitted).

Furthermore, I can conceive of no justification for the trial court to prohibit the Anserts from conducting discovery on their bad faith claim. Indiana's discovery rules are designed to allow a liberal discovery process to provide parties with information essential to the litigation of the issues and to promote settlement. *Rivers v. Methodist Hospitals, Inc.*, 654 N.E.2d 811, 813 (Ind.Ct.App.1995). Generally, parties may obtain discovery of any nonprivileged matter relevant to the subject matter involved in the pending litigation. *Mulder v. Vankersen*, 637 N.E.2d 1335, 1337 (Ind.Ct.App.1994), *trans. denied.* As noted above, the Anserts have sufficiently stated a claim for a bad faith insurance practice as prohibited by I.C. 27–4–1–4.5(13). Thus, I am compelled to conclude that the trial court also committed error in prohibiting the Anserts from conducting discovery on their claim. *See Rembold Motors, Inc. v. Bonfield*, 155 Ind.App. 422, 293 N.E.2d 210, 220 (1973) (The trial court errs in entering summary judgment before discovery matters have been resolved). Summary judgment proceedings should not be used as an abbreviated trial. *Brewster v. Rankins*, 600 N.E.2d 154, 156 (Ind.App.1992). Although summary judgment proceedings expose spurious cases and eliminate undue burdens on courts and litigants, courts must exercise caution to ensure that a party is not denied his right to a fair determination of a genuine issue of fact. *Four Winns, Inc. v. Cincinnati Insurance Company, Inc.*, 471 N.E.2d 1187, 1188 (Ind.Ct.App.1984), *trans. denied.* As noted earlier, improbability of recovery does not justify summary judgment. *Id.*

Our supreme court has recognized a cause of action for the tortious breach of an insurer's duty to deal in good faith with its insured. *See Erie*, 622 N.E.2d at 519. Neither this court, nor the trial court, may abolish the tort or hastily abort such cases simply because the litigation may be distasteful. I would reverse and remand with instructions that the Anserts be permitted to conduct discovery and proceed to trial on their claim.