DECISION.
The defendant-appellant, Dante Keeling, was indicted for aggravated robbery with a gun specification under R.C. 2911.01(A)(1); robbery under R.C. 2911.02(A)(2); felonious assault with a gun specification under R.C. 2903.11(A)(2); and possession of cocaine under R.C. 2925.11(A). Keeling pleaded guilty to possession of cocaine, but not guilty to the other charges. On September 6, 2001, the jury returned a guilty verdict on all the tried counts and specifications. For the reasons that follow, we affirm Keeling's conviction and sentence.
FACTS
On March 28, 2001, Troy Davis was in Cincinnati visiting his son. He and a friend went out that night to Sonny's Bar, where they stayed between 2:00 a.m. and 2:30 a.m. Davis consumed about four drinks in the course of the night. On the way home from the bar, Davis's friend left Davis near a restaurant because Davis wanted something to eat. The restaurant was closed, so Davis began walking the two blocks to his sister's house, where he was staying while in Cincinnati. As he was leaving the area around the restaurant, he saw a van pull up to the corner and someone get out.
His suspicions aroused, Davis continued walking. As he approached a Quik-Stop convenience store, he heard a voice behind him say, "Hey, dude." When he turned around, a man was holding a gun to his face. Davis stood and stared at his assailant's face. The assailant grabbed Davis by the back of the shirt and strong-armed him to an empty lot, where he made Davis empty his pockets. Davis's money, rings and jewelry were taken out and thrown to the ground. The assailant kept telling Davis to turn around. Davis took a few steps and two shots were fired at him. The first shot missed, but the second shot hit Davis in the back, permanently paralyzing him below the chest. Davis is now confined to a wheelchair for the rest of his life.
Cincinnati Police Officer Mary Thompson-Cowan interviewed Davis in the hospital soon after the shooting. Davis described his assailant as a black male dressed in dark clothing, with a "lazy eye." Davis told Officer Thompson-Cowan that he could identify his assailant if he saw him. In an unrelated arrest, a suspect later gave Officer Thompson-Cowan a tip that Keeling had shot Davis. Based on this information and the description Davis had given of his assailant, Officer Thompson-Cowan ordered a computer-generated photographic array that included a photograph of Keeling and photographs of five others with similar characteristics and features. Officer Thompson-Cowan showed the photographic array to Davis and he identified Keeling as his assailant.
ANALYSIS
In his first assignment of error, Keeling argues that he was denied his right to effective assistance of counsel under the Fifth, Sixth, andFourteenth Amendments to the United States Constitution.
"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."Strickland v. Washington (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052. There is a strong presumption that an attorney's representation falls within the "wide range of reasonable professional assistance," because there are many ways to provide effective counseling. Id. at 689,104 S.Ct. 2052. "[C]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989)42 Ohio St.3d 136, 142, 538 N.E.2d 373.
Keeling first argues that his trial attorney was ineffective because he did not retain an expert to demonstrate to the jury the inaccuracies of eyewitness identification. Keeling contends that the services of such an expert were particularly appropriate in a case such as this, when the victim gave a very general description of his assailant. The lack of an expert to explain the inherent unreliability of eyewitness identification, Keeling argues, was fatal to his defense.
The decision to forego an eyewitness-identification expert is a recognized trial strategy. "Appellant's counsel evidently decided not to request the appointment of an eyewitness identification expert, choosing instead to rely on their cross-examination of the witnesses in order to impeach the eyewitnesses." State v. Madrigal, 87 Ohio St.3d 378, 390,2000-Ohio-448, 721 N.E.2d 52. In the present case, relying on cross-examination, Keeling's trial attorney ably probed Davis's perception of the assailant and his ability to later identify him. On this record, we cannot say that the decision to forego an expert in any way altered the outcome of the trial. Nor can we say that, by adopting a strategy of relying on cross-examination, Davis's counsel was not functioning as "counsel guaranteed by the Sixth Amendment." Id., citingState v. Thompson (1987), 33 Ohio St.3d 1, 11, 514 N.E.2d 407.
Finally, we note that it is purely speculative as to what the testimony of such an expert would have been. Id. Because a determination of prejudice would require proof outside the record, by way of affidavits demonstrating the expert's probable testimony, Keeling's claim is more appropriate for postconviction relief.
Keeling also argues that his defense counsel fell below the Strickland
standard because an alibi defense was not used, despite the fact that Keeling took the stand in his own defense. Keeling's decision not to present an alibi was a clear tactical decision. "The right to counsel is the right to effective assistance of counsel. It does not guarantee the accused the right to error-proof counsel and `hindsight should play little role in measuring effectiveness.'" State v. Sneed (1992),63 Ohio St.3d 3, 584 N.E.2d 1160, citing Stano v. Dugger (C.A.11, 1989)883 F.2d 900, 912. Because Keeling has failed to demonstrate a factual basis for an alibi defense in the record, we cannot say that counsel was ineffective for failing to raise such a defense at trial.
Finally, Keeling argues that his defense counsel fell below theStrickland standard because counsel failed to present an expert to testify on the effect of alcohol on a person's ability to perceive events. Specifically, Keeling argues that Davis should not have been permitted to state how he would "never forget that face" without any rebuttal by an expert on the effect of alcohol on perception.
Evid.R. 702 states that experts may be necessary to testify on matters "beyond the knowledge or experience possessed by lay persons," or that they may testify to dispel "a misconception common among lay persons." Whether Davis's perception and memory were impaired at the time he was robbed and assaulted was a question of fact for the jurors, and was not, necessarily, a matter beyond their own knowledge or experience. "Exposure to the effects of age and of intoxicants upon state of mind is a part of common human experience which fact finders can understand and apply; indeed, they would apply them even if the state did not tell them they could * * *. " State v. Hamm (June 26, 1986), 4th Dist. No. 581. Because an intoxication expert was not necessary for the jury to reach a reasonable conclusion on the effects of alcohol, the record does not affirmatively demonstrate that Keeling was prejudiced by the lack of such an expert. And we note that, given the failure of the trial record to demonstrate what such an expert's testimony would even have been, this claim of ineffective assistance is more appropriate for postconviction relief. Keeling's first assignment of error is, therefore, overruled.
Keeling's second assignment of error states that the trial court erred by failing to suppress the identification of Keeling by photographic array. Keeling claims that he was the only suspect in the array who had an unusual eye, and therefore that the identification made by Davis was unnecessarily suggestive.
A two-prong test is used to determine whether a photographic identification should be suppressed. See State v. Waddy (1992),63 Ohio St.3d 424, 438, 588 N.E.2d 819. The first prong is whether the identification procedure was unnecessarily suggestive. Id. In this regard, Officer Thompson-Cowan testified that three or four individuals whose photographs were in the array had unusual eyes like Keeling. In addition, Officer Thompson-Cowan described how the photographs were chosen for the array. She gave the operator at the Hamilton County Bureau of Investigation Keeling's photograph. The operator put the photograph into a computer, and the computer selected pictures of people who looked similar to Keeling. The operator printed those pictures out, and they were used in the array that was given to the victim for the identification. Thus, an objective computer, not a subjective individual, selected the pictures.
The second prong is whether, under all the circumstances, the identification was reliable, i.e., whether there was "a very substantial likelihood of irreparable misidentification." Simmons v. United States
(1968), 390 U.S. 377, 388, 88 S.Ct. 967. In making such a determination, a court should consider certain key factors, such as the witness's opportunity to view the suspect during the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the time elapsed between the crime and the identification. See Neil v. Biggers (1972), 409 U.S. 188,93 S.Ct. 375.
In this case, the record establishes that Davis got a good look at his assailant as he was being robbed. In his testimony, Davis stated repeatedly that he remembered Keeling's face and that he would never forget it. Davis was also able to give a description of his assailant to the police. In this description, Davis said that his assailant had an unusual eye, or one that was brighter than the other.
Based upon the lack of suggestive procedures, and Davis's positive description and identification of Keeling, we hold that the trial court did not err in denying Keeling's motion to suppress. Accordingly, Keeling's second assignment is overruled.
In his third assignment of error, Keeling argues that his convictions were based upon insufficient evidence. A conviction is supported by sufficient evidence if the record contains substantial, credible evidence from which it could reasonably be concluded that all elements of the charged offense had been proven beyond a reasonable doubt. Waddy, supra, at 430, 588 N.E.2d 819. In this case, the jury heard ample testimony that raised issues concerning only weight and credibility, and it therefore had an appropriate basis to find that the prosecution had shown all the elements of each offense beyond a reasonable doubt. Based upon the evidence we have previously summarized, we overrule Keeling's third assignment of error.
In his fourth assignment of error, Keeling argues that his convictions for aggravated robbery, robbery, and felonious assault were contrary to the manifest weight of evidence. Specifically, Keeling argues that the only witness was the victim, Troy Davis, who could not have obtained a good look at his assailant, and who, in addition, had consumed four drinks earlier in the morning. In addition, no money, gun, clothes, or other physical evidence was found to link Keeling to these crimes.
In responding to a challenge to the weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 841, citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211. In a criminal case, the appellate court acts as a thirteenth juror, but has the power to reverse only in the exceptional case where the jury's failure to correctly assess the evidence is obvious. Id.
The jury found Keeling guilty of aggravated robbery, robbery, and felonious assault after considering all the evidence and hearing the testimony of Davis, Officer Thompson-Cowan, and Keeling. It is the fact finder, not this court, that primarily assesses a witness's credibility at trial. In this case, the jury found the witnesses for the prosecution, particularly the victim, Davis, to be more credible than Keeling. Even sitting as a thirteenth juror, we cannot say that the jury lost its way or committed a manifest miscarriage of justice. Keeling's fourth assignment of error is overruled.
In his fifth assignment of error, Keeling argues that the trial court erred by ruling that the state had established venue. Pursuant to Section10, Article I, of the Ohio Constitution, a criminal defendant is to be tried "in the county in which the offense is alleged to have been committed." R.C. 2901.12 confers subject-matter jurisdiction upon a trial court in the "territory of which the offense or any element thereof was committed." See, also, Crim.R. 18. Although venue is not an element of an offense, it must be proved by the state beyond a reasonable doubt. SeeState v. Headley (1983), 6 Ohio St.3d 475, 477, 453 N.E.2d 716, citingState v. Draggo (1981), 65 Ohio St.2d 88, 418 N.E.2d 1343. If the prosecution does not present sufficient evidence to prove venue, the conviction must be reversed. See State v. Gardner (1987),42 Ohio App.3d 157, 158, 536 N.E.2d 1187.
In this case, the record clearly indicates that the prosecution circumstantially established that the crimes occurred in Hamilton County, Ohio. Davis testified that he had been living in Chicago for the past six years. The court asked him how long he had been back in Cincinnati, and Davis stated that he had been back for two and a half weeks when Keeling shot him. The prosecution also asked him if he drove home the night he was shot, and Davis replied in the negative, explaining that he did not drive in Cincinnati. Davis also stated that his friend drove him to a restaurant in Bond Hill where he was dropped off shortly before he was robbed and assaulted. Because these facts clearly established that the crimes occurred in Hamilton County, Ohio, Keeling's fifth assignment of error is overruled.
Keeling argues in his sixth assignment of error that the trial court erred by incorrectly instructing the jury on the elements of the robbery offenses and on the significance of the stipulation entered into by the parties.
Initially, we note that Keeling did not object to the jury instructions that were given on the robbery offenses. The state correctly argues that Keeling's failure to object to the instructions constituted a waiver of the issues raised unless the trial court can be said to have committed "plain error." The doctrine of plain error is an exception to the general rule that an error is waived by a failure to object. Crim.R. 52(B). An appellate court's power to notice plain error is discretionary and requires a tripartite analysis as to whether (1) there was error, (2) the error was plain, and (3) the defendant was prejudiced to the detriment of his or her substantial rights. See State v. Lang (1995),102 Ohio App.3d 243, 248-249, 656 N.E.2d 1358, reversed on other grounds sub nom. State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.
With respect to the first count of the indictment, Keeling was charged with and convicted of aggravated robbery under R.C. 2911.01(A)(1). That section states that "[n]o person, in attempting or committing a theft offense shall do anything of the following: have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." But, in instructing the jury on aggravated robbery, the trial court omitted the element of displaying, brandishing, indicating possession of, or using the weapon. Rather, the trial court's instruction described the predicate behavior as having a "firearm" on or about the person. Although the state argues that the instruction more closely resembled aggravated robbery under R.C. 2911.01(A)(2), which requires that the offender have a "dangerous ordnance" on or about his person, we agree with Keeling that the trial court's instruction also can be said to resemble the elements of simple robbery under R.C. 2911.02(A)(1), which requires that a person have a "deadly weapon" on or about his person. Keeling argues that because the jury instruction was closer to defining simple robbery, due to the omitted element of "brandishing the weapon," the jury was incorrectly instructed upon a lesser charge and could not legally have found him guilty of the greater charge.
A constitutional error is harmless when it appears beyond a reasonable doubt that the error did not contribute to the verdict. Chapman v.California (1967) 386 U.S. 18, 23-24, 87 S.Ct. 824. In Neder v. U.S. (1999), 527 U.S. 1, 20, 24, 119 S.Ct. 1827, the Supreme Court concluded that the omission of an element of an offense from a jury instruction did not fall within the limited category of constitutional errors that "defy analysis by `harmless error' standards." "Rather, the Supreme Court expanded the use of the harmless-error rule to encompass a court's failure to instruct the jury on an element of the offense and held this error to be harmless." United States v. Monger (C.A.6, 1999), 185 F.3d 574,578, citing Neder, supra, at 24, 119 S.Ct. 1827. Where a reviewing court determines beyond a reasonable doubt that the omitted element has been shown by overwhelming evidence, and that no other rational conclusion is possible with respect to the omitted element, the error is harmless.Neder, supra, at 20, 119 S.Ct. 1827.
In this case, we hold that there was no possibility that the error in the jury instructions affected the outcome of the jury's deliberations. The evidence of aggravated robbery was overwhelming. Under no possible scenario could the jury have rationally found that Keeling was not the assailant or that he did not brandish, display, or use a gun. Davis was the only person who testified concerning the events, and he unequivocally described the assailant as pointing — i.e., brandishing — a gun in his face. Keeling did not dispute Davis's version of events, only his participation in them.
Furthermore, neither the state nor Keeling have addressed the fact that the trial court's instruction on the gun specification to count one incorrectly included the element of displaying, brandishing, indicating possession of, or using a weapon. In other words, what the trial court incorrectly omitted from the aggravated-robbery instruction, it incorrectly included in the gun-specification instruction. Significantly, the jury found Keeling guilty of the gun specification, thus making clear that it found that Keeling had satisfied the requirement of aggravated robbery under R.C. 2911.01(A)(1), because he either displayed, brandished, indicated the possession of, or used a weapon. The harmlessness of the error is irrefutably established under these circumstances.
Next we consider the fact that the trial court instructed the jury on robbery under R.C. 2911.02(A)(3), a third-degree felony, whereas under count two he was actually indicted for robbery under R.C. 2911.02(A)(2), a second-degree felony. The difference between the two subsections is that, under the (A)(2) subsection, Keeling must have either threatened to inflict, attempted to inflict, or actually inflicted physical harm on Keeling, whereas, under subsection (A)(3), he must only have used or threatened the immediate use of force. It should be pointed out that, notwithstanding the error in the instruction, the jury's verdict indicated that the jury had found Keeling guilty of robbery under R.C.2911.02(A)(2), and the trial court entered a judgment of conviction and imposed sentence under R.C. 2911.02(A)(2).
The state concedes that the jury instruction on R.C. 2911.02(A)(3) was erroneous, but argues that the error was harmless because the evidence overwhelmingly supported a conviction under R.C. 2911.02(A)(2). Again, the question, for purposes of a harmless-error analysis, is whether Keeling was in any sense prejudiced by the trial court's error.
Under these circumstances, the only prejudice Keeling can logically assert is that he was ultimately convicted under R.C. 2911.02(A)(2), as opposed to (A)(3). This, however, can only have been prejudicial had there been a realistic possibility that the jury would have not found the additional omitted element of either threatened or actual physical harm. In this respect, we again note that there was no dispute at trial regarding the manner in which the crime was committed, only who committed it. Davis was shot and permanently paralyzed. Obviously, therefore, if the jury found Keeling to be the assailant, there was no rationale scenario under which it would not have been found that he had threatened or inflicted physical harm upon Davis. We can discern, therefore, no prejudice to Keeling on this record, particularly for the purposes of correcting plain error. Because the evidence of guilt was overwhelming on the charge of robbery under subsection (A)(2) Davis was clearly shot and seriously wounded — Keeling was not prejudiced by the trial court's failure to charge the jury under this subsection.
Finally, Keeling argues that the trial court erred by failing to adequately instruct the jury on the effect of the stipulations of the parties, and to provide a separate instruction on eyewitness testimony. With respect to the first of these arguments, the court addressed the stipulations twice in its instructions to the jury, and we hold that there was no inadequacy or prejudice resulting from the lack of any further instruction. Similarly, we hold that the trial court's instructions on the credibility of witnesses was adequate with respect to the jury's treatment of Davis's eyewitness account of his robbery and shooting.
Accordingly, we overrule Keeling's sixth assignment of error.
Based on the foregoing, the judgment of the trial court is affirmed.
Judgment affirmed.
Gorman, P.J., Sundermann and Winkler, JJ.