

IN THE

# Court of Appeals of Indiana



FILED

Jun 24 2024, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Bradley Baldwin, Individually and as Assignee of Tommi C. Hummel and Travor Hummel,

*Appellant-Defendant and Counter-Claimant*

and

Bradley Baldwin, Individually and as Assignee of Jess M. Smith, III, of Tom Scott & Associates, P.C., as Special Personal Representative of the Estate of Jill L. McCarty, Deceased,

*Appellant-Defendant and Counter-Claimant*

v.

The Standard Fire Insurance Company,

*Appellee-Plaintiff and Counter-Defendant*

and

Tommi C. Hummel, Travor Hummel, Jill L. McCarty, John M. Hopkins, State Farm Mutual Insurance Company, and Department of Child Services Indiana Child Support Bureau,

*Other Defendants below.*

June 24, 2024

Court of Appeals Case No.
23A-CT-2728

Appeal from the Marshall County Circuit Court

The Honorable Curtis D. Palmer, Judge

Trial Court Cause No.
50C01-1901-CT-3

**Opinion by Judge Mathias**
Judges Vaidik and Kenworthy concur.

**Mathias, Judge.**

[1] Bradley Baldwin, as the assignee of putative claims against The Standard Fire Insurance Company, d/b/a Travelers, appeals the trial court's entry of summary judgment for Standard Fire and the denial of his motions for summary judgment. Across two briefs, Baldwin raises thirteen issues for our review, which we consolidate and restate as the following six issues:

1. Whether an insured's assignee may seek to hold an insurer liable, under the insurer's duty to defend, for the allegedly negligent performance of the insured's provided counsel.

2. Whether an insurer's duty to exercise good faith and fair dealing toward its insured requires the insurer to consider the insured's interests when deciding whether to accept a settlement offer.

3. Whether a genuine issue of material fact precludes the entry of summary judgment on the issue of whether Standard Fire acted in bad faith toward its insureds.

4. Whether a settlement agreement entered into between insureds and their accident victim, and without the insurer's consent, is binding on the insurer.

5. Whether an award of prejudgment interest entered for the insureds in a separate lawsuit is enforceable here against the insurer.

6. Whether an insurer is limited to the facts pleaded in a complaint in determining its duty to defend.

We hold that Indiana law does not allow an insured's assignee to, in effect, seek to hold the insurer vicariously liable for the allegedly negligent performance of the counsel provided by the insured's carrier. However, we also hold that an insurer's duty to exercise good faith and fair dealing toward its insureds requires the insurer to accept a settlement offer where a reasonably prudent insurer would have accepted the offer if it alone were to be liable for the entire judgment beyond the policy limits. We also hold that a genuine issue of material fact precludes the entry of summary judgment on whether Standard Fire acted in bad faith toward its insureds, the Hummels. And we hold that the Hummels' settlement agreement is not binding on Standard Fire; that the Hummels may not here seek to enforce prejudgment interest awarded to them in a separate cause; and that Indiana law is clear that an insurer may consider facts known to it outside of the pleadings in determining its duty to defend.

[3] In light of those holdings, we affirm the trial court's entry of summary judgment for Standard Fire in part as well as the trial court's denial of Baldwin's motions for summary judgment. However, we also reverse the trial court's entry of summary judgment for Standard Fire in part, and we remand for further proceedings consistent with this opinion.

## Facts and Procedural History

[4] Around 3:45 p.m. on June 16, 2018, Baldwin was driving south on U.S. 31 in Marshall County. At that same time, Tommi Hummel was driving east on State Road 10. In the back seat of Tommi's vehicle were two passengers: John Hopkins and Jill McCarty. As Tommi approached the intersection with U.S. 31, she attempted to cross the south-bound lanes but failed to yield to Baldwin's right of way. As a result, Baldwin's vehicle collided with Tommi's and came to rest in the north-bound lanes of U.S. 31.

[5] Police officers arrived on the scene shortly after the accident. Baldwin was seriously injured and transported by ambulance to a nearby hospital. Tommi was trapped in her vehicle, and Hopkins was unconscious; both were air-lifted to a hospital in South Bend. McCarty had fled the scene. While investigating the accident, one officer "observed in plain view drug paraphernalia and alcohol containers inside" Tommi's vehicle. Appellants' App. Vol. 5, p. 105.

[6] Three lawsuits in the Marshall Circuit Court resulted. In the first, Baldwin filed a complaint against Tommi and her husband, Travor, to recover for his

personal injuries resulting from Tommi's negligence ("the Hummel lawsuit").[1] The Hummels had an automobile insurance policy with Standard Fire; that policy provided for bodily injury liability coverage limits of $50,000 per person and $100,000 per accident. The policy further stated: "We[, Standard Fire,] will settle or defend, as we consider appropriate, any claim or suit asking for [policy] damages. In addition to our limit of liability, we will pay all defense costs . . . ." Appellants' App. Vol. 2, p. 195. In accordance with that language, Standard Fire hired outside counsel to represent the Hummels.

[7] In November 2018, Baldwin's counsel offered a "time-limited settlement demand" ("the November 2018 settlement offer"). Appellants' App. Vol. 3, p. 131 (capitalization, bolding, and underlining removed). Included with that demand were Baldwin's medical records and bills following the accident as well as his 2017 tax returns. Based on the Hummels' "certain" liability, Baldwin's "extensive" injuries, and the "limited" insurance coverage amounts, Baldwin offered to settle with the Hummels for the per-person policy limit of $50,000 in exchange for various representations and waivers. *Id.* at 132-33 (capitalization, bolding, and underlining removed).

[8] At the time Baldwin made the November 2018 settlement offer, Standard Fire and Hummels' counsel, who were in frequent communication about the merits of Baldwin's claim and how to proceed, had already concluded that Baldwin's

---

[1] Baldwin did not name Standard Fire as a defendant in the Hummel lawsuit, nor did Standard Fire intervene.

claim against the Hummels would "exceed[] the $50,000 [per-person policy] limit." Appellants' App. Vol. 34, pp. 39, 42. They had similarly already concluded that, even though he had not done so yet, if Hopkins also were to make a claim it too would be "certain" to exceed $50,000. *Id.* at 40, 42. Nonetheless, Standard Fire did not accept Baldwin's offer on the Hummels' behalf, and the November 2018 settlement offer expired. Instead of accepting that offer, Standard Fire opted to proceed by way of an interpleader action "in order to protect the [per-collision] policy limit of $100,000." *Id.* at 44.

[9] The trial court eventually set an April 2021 trial date in the Hummel lawsuit. Near that date, Baldwin offered to settle his claims with the Hummels for $700,000. Standard Fire rejected that offer as well. The Hummels then independently entered into a confidential settlement agreement with Baldwin. In that agreement, the Hummels agreed to the entry of judgment against them in the amount of $700,000. And, in exchange for Baldwin foregoing the right to pursue recovery of that judgment against the Hummels personally, the Hummels agreed to assign to Baldwin any and all claims they may have against Standard Fire. The trial court reduced that agreement to a final judgment in April 2021. It thereafter amended the judgment to include an award of $86,378 in prejudgment interest.

[10] In December 2018—after he had filed suit against the Hummels but before Standard Fire had filed the interpleader action—Baldwin filed a second

complaint, this time against Hopkins and McCarty ("the McCarty lawsuit").[2] In that complaint, Baldwin alleged that, at the time of the accident, Tommi had been "operating [her] vehicle while under the influence of drugs or other substances which impaired [her] abilities to do so, a fact which was known, or should have been known, to Hopkins and McCarty." Appellants' App. Vol. 2, p. 148. Baldwin further alleged that Hopkins and McCarty were liable for Tommi's negligence because they were "members of a joint venture, or by way of [respondeat] superior . . . , or for negligent entrustment of the operation of a motor vehicle to Tommi . . . ." *Id.*

[11]   McCarty failed to answer or appear in response to that complaint, she never notified Standard Fire of the complaint, and Standard Fire did not obtain counsel to represent McCarty. The trial court entered default judgment against McCarty in the amount of $700,000. She died thereafter, and an Estate was opened. Baldwin and McCarty's Estate then entered into an agreement wherein the Estate assigned to Baldwin any and all claims McCarty may have had against Standard Fire in exchange for Baldwin entering a satisfaction of judgment on his claims against McCarty in the McCarty lawsuit.

[12]   And that brings us to the third and instant lawsuit, Standard Fire's interpleader action and complaint for declaratory judgment against Baldwin, the Hummels, Hopkins, and McCarty, which Standard Fire filed in January 2019. In its last-

---

[2] Baldwin did not name Standard Fire as a defendant in the McCarty lawsuit, nor did Standard Fire intervene.

amended pleading,[3] Standard Fire admitted that its policy with the Hummels was in full force and effect at the time of Tommi's June 2018 accident with Baldwin and that Standard Fire was liable "to pay the face amount of" the per-collision $100,000 policy limit to anyone "entitled to receive said proceeds." *Id.* at 174. However, Standard Fire was "uncertain as to which party or parties [we]re entitled to receive all or any part" of the $100,000 due to the Hummel and McCarty lawsuits. *Id.*

[13] In December 2019, Standard Fire deposited $100,000 with the trial court clerk and requested the trial court to declare that Standard Fire had performed all of its duties and obligations under the policy. The court held a hearing, after which the court ordered the release of $50,000 of the deposited funds to Baldwin but otherwise denied Standard Fire's request. Later, the court ordered the release of the additional $50,000 to Hopkins, and he was dismissed from the proceedings.

[14] After receiving the assignments in the Hummel lawsuit and the McCarty lawsuit, Baldwin filed amended counterclaims against Standard Fire in the interpleader action. Across two counts, Baldwin alleged that Standard Fire had breached its duties to the Hummels and McCarty, including the duty to defend them as well as the duty to exercise good faith and fair dealing toward them.

---

[3] Standard Fire's last-amended pleading in the interpleader action also named State Farm Mutual Insurance Company and the Indiana Department of Child Services as parties, but they were both later dismissed.

Baldwin also separately alleged that Standard Fire had acted in bad faith toward the Hummels and McCarty.

[15] Thereafter, Standard Fire and Baldwin filed cross-motions for summary judgment. After a hearing, the trial court entered a consolidated order in which the court denied Baldwin's motions for summary judgment and granted Standard Fire's motion. The court reduced that consolidated order to a final judgment, stating that, as to Baldwin's arguments regarding Standard Fire's duties to the Hummels, Standard Fire had "fulfilled and did not breach" those duties. *Id.* at 53-54. And, as to Baldwin's arguments regarding Standard Fire's duties to McCarty, the court concluded that Standard Fire "did not have" any duties to her. *Id.* at 54.

[16] This appeal ensued.

## Standard of Review and Overview

[17] Baldwin appeals the trial court's grant of summary judgment to Standard Fire and denial of his motions for summary judgment. Our standard of review is well settled:

> When this Court reviews a grant or denial of a motion for summary judgment, we "stand in the shoes of the trial court." Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We will draw all reasonable inferences in favor of the non-moving party. We review summary judgment de novo.

*Arrendale v. Am. Imaging & MRI, LLC*, 183 N.E.3d 1064, 1067-68 (Ind. 2022) (citations omitted). Questions of contract interpretation present legal questions that are particularly apt for summary judgment. *See Erie Indem. Co. v. Estate of Harris*, 99 N.E.3d 625, 629 (Ind. 2018). Further, that the parties have filed cross-motions for summary judgment neither alters our standard of review nor changes our analysis—we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

[18]   Before turning to the parties' arguments on appeal, we must distinguish three different legal issues that they have conflated. In his amended counterclaim on behalf of the Hummels in the interpleader action, Baldwin alleged that Standard Fire had breached its duty to defend the Hummels; that Standard Fire had breached its duty to exercise good faith and fair dealing toward the Hummels; and that Standard Fire had affirmatively acted in bad faith toward the Hummels.[4] Appellants' App. Vol. 3, pp. 61-64. In its motion for summary judgment on that counterclaim, Standard Fire sought complete judgment as a matter of law and identified those three separate issues, but it then generally argued that it had acted reasonably and not in bad faith before additionally arguing that provided counsel's performance was also reasonable. *See* Appellants' App. Vol. 15, pp. 124-29. Baldwin's responsive argument followed

---

[4] Our case law also has occasionally conflated the distinct ideas of a breach of the duty to exercise good faith and fair dealing with bad faith. *See, e.g.*, *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310-11 (Ind. Ct. App. 2001), *trans. denied*. However, as explained in part 3 below, our Supreme Court has made clear that they are distinct legal issues.

in kind, and the trial court's judgment did not separately delineate the three legal issues either. And the parties' arguments on appeal also follow suit.

[19] We address those three legal issues with respect to the Hummels' claims against Standard Fire separately. Thus, we first address whether Baldwin, as the Hummels' assignee, may attempt to hold Standard Fire vicariously liable for the allegedly negligent performance of the counsel it provided under Standard Fire's duty to defend the Hummels. We separately address whether Standard Fire's own decision-making in allowing the November 2018 settlement offer to lapse in the Hummel lawsuit violated Standard Fire's duty to exercise good faith and fair dealing toward the Hummels. And we then address whether the designated evidence establishes a genuine issue of material fact on the allegation that Standard Fire had affirmatively acted in bad faith toward the Hummels. From there, we proceed to the remaining issues in this appeal, namely, whether Standard Fire is bound either by the $700,000 judgment in the Hummel lawsuit or by the corresponding award of prejudgment interest, and whether summary judgment for Standard Fire on Baldwin's claims assigned by McCarty's Estate was proper.

## 1. An assignee may not argue that the allegedly negligent performance of counsel provided by an insurer to an insured is a basis for liability against the insurer under the insurer's duty to defend.

[20] We begin our review with the trial court's entry of summary judgment for Standard Fire on Baldwin's claim that Standard Fire breached its duty to

defend the Hummels. Standard Fire argues that it fulfilled its duty to defend the Hummels when it hired reputable outside counsel to represent them in the Hummel lawsuit and, further, that counsel reasonably and adequately performed their duties. In response, Baldwin argues that the Hummels' counsel negligently performed their duties to the Hummels, for which Standard Fire should be held liable. In particular, and relying on a designated expert affidavit, Baldwin argues that the Hummels' counsel negligently failed to investigate the full scope of the Hummels' possible liability and instead "engage[d] in the absolute minimum . . . in the hopes of obtaining a complete release" of Standard Fire.[5] Appellants' App. Vol. 39, p. 34.

[21] Indiana's case law on an insurer's duty to defend an insured has to this point focused on determining if a duty to defend exists and not in determining what actions are or are not within the exercise of that duty. *See, e.g.*, *Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 865 (Ind. 2022). We therefore first consider a leading treatise on these issues. That treatise explains that the duty to defend generally means hiring independent counsel for the insured. *See* 1 Allan D. Windt, *Ins. Claims & Disputes* § 4:12 (Mar. 2024). If there is no conflict of interest between

---

[5] In his affidavit, Baldwin's expert similarly criticizes Standard Fire's own claims adjuster for not doing more to discern the precise contours and likely total amount of liability the Hummels faced. But, within about one month of Baldwin's complaint against the Hummels, Standard Fire had provided outside counsel for the Hummels, and both Standard Fire and Hummels' provided counsel had already agreed that Baldwin's claim would exceed the per-person policy limit. Baldwin cites no legal authority for the proposition that an insurer—rather than counsel the insurer has already provided for the insureds—must do more in those circumstances for its insureds under the insurer's duty to defend. We therefore conclude that the affidavit is not sufficient to establish a genuine issue of material fact in this respect regarding Standard Fire's duty to defend the Hummels.

the insurer and the insured "with regard to how the lawsuit should be defended . . . , the insurer can hire counsel to represent both the insured's and the [insurer's] interests in the litigation." *Id.* § 4:20. However, if there is a conflict, the insurer should either hire independent counsel for the insured or permit the insured to select private counsel at the insurer's expense. *Id.*

[22] Here, Standard Fire hired outside counsel for the Hummels promptly after Baldwin filed his complaint. Further, there is no suggestion that the provided counsel was, at the time they were hired, inappropriate for the task at hand, whether due to a conflict of interest with the Hummels or otherwise. *See id.* §§ 4:39 to 4:40. Accordingly, we conclude that Standard Fire established a prima facie showing that it was entitled to summary judgment on Baldwin's allegation that it breached its duty to defend the Hummels.

[23] And Baldwin's response—which seeks by way of an assignee to hold an insurer vicariously liable for the purported negligent performance of provided counsel—is not permissible under Indiana law. Baldwin's claim here is on assignment from the Hummels, and, while he has couched his argument under the insurer's duty to defend rather than counsel's negligence, the nature of his argument is a legal malpractice claim against the Hummels' provided counsel for which Standard Fire should be held vicariously liable.[6]

---

[6] Baldwin separately argues on appeal that Standard Fire breached its duty to defend the Hummels by not providing them with counsel through the April 2021 final judgment in the Hummel lawsuit. But the

[24] We have previously held that such arguments are not permissible under Indiana law. *Smith v. Progressive Se. Ins. Co.*, 150 N.E.3d 192, 200-02 (Ind. Ct. App. 2020), *trans. denied*. As we explained in *Smith*:

> [The insured's assignee] contends that but for [provided counsel's] actions or inactions, [the insured] would not have incurred a substantial personal injury judgment. . . . [T]he nature of [the assignee's] complaint against [the insurer] for vicarious liability is nothing more than a negligence claim that involves alleged legal malpractice by [provided counsel]—a claim that is not assignable under Indiana law.

*Id.* (discussing *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 339, 342 (Ind. 1991)).

[25] We see no good reason why that same rule should not apply here simply because Baldwin has styled his assigned claim as a breach of a contractual duty rather than in negligence. Either way, the gravamen of his argument is vicarious liability for legal malpractice, and that claim is not assignable in Indiana. *Id.* at 201 (stating that it is a "bright-line rule drawn by our supreme court" that legal malpractice claims are not assignable). We therefore affirm the trial court's entry of summary judgment for Standard Fire on Baldwin's claim that Standard Fire breached its duty to defend the Hummels by way of the alleged negligent performance of provided counsel.

---

designated evidence makes clear that Standard Fire continued to employ outside counsel for the Hummels through that judgment; whether counsel's performance was, as Baldwin says, "illusory" is not a basis for liability against Standard Fire on these facts for the same reasons Baldwin's attempt to establish vicarious liability for legal malpractice is not viable. *See* Appellants' Hummel Br. at 20. Accordingly, we affirm the trial court's denial of Baldwin's motion for summary judgment on this issue.

## 2. An insurer's duty to exercise good faith and fair dealing toward its insureds requires the insurer to consider the insureds' interests in settlement decisions.

[26] We next consider Baldwin's claim that Standard Fire breached its duty to exercise good faith and fair dealing toward the Hummels. Indiana law is well-settled that an insurer owes its insureds a duty of good faith and fair dealing. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). As our Supreme Court has noted:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Id.*

[27] Here, the policy, as we suspect nearly all automobile policies in Indiana do, provided the insurer with the exclusive right to enter into settlements on claims made under the policy. Thus, under *Hickman*, Standard Fire's discharge of that contract right required Standard Fire to exercise good faith and fair dealing toward the Hummels in deciding whether to accept or not to accept a settlement offer. *See id.*

[28] Baldwin's November 2018 settlement offer was at the policy limit for per-person coverage, which presented a special concern. As Windt explains:

When a claim against an insured can be settled for the policy limit, a conflict of interest exists between the insured and the insurance company. It is generally in the insured's interest to settle for the policy limit, since doing so protects the insured from any potential personal liability. However, it is generally not in the insurance company's interest to settle for the policy limit. Apart from considerations of defense costs, the insurance company cannot do any worse than paying its policy limit. As long as any chance existed, no matter how remote, that the insured might prevail, it would generally be in the insurance company's interest to litigate rather than settle for the policy limit. Moreover, liability insurance policies, by their terms, give insurers complete discretion in deciding whether to settle or litigate. *In light of that fact, and the conflict of interest that can arise between the insurer and the insured in connection with whether a claim against an insured should be settled, the law has imposed on insurance companies an implied contractual obligation to settle under certain circumstances.*

Windt, *supra*, at § 5:1 (emphasis added; footnotes omitted). Windt continues:

In one of the rare times that there is unanimity among the states with regard to a principle of insurance, *the law in every state can be understood to require that, in deciding whether to use its policy limit to obtain a settlement on behalf of its insured, the insurer must give its insured's interest equal consideration to its own interests.*

*Id.* (emphasis added). Thus, whether an insurer, in its exercise of good faith and fair dealing toward its insureds, has an obligation to settle when an offer is made at the policy limit turns on whether "a reasonably prudent person would, in light of the person's potential exposure to a judgment in excess of the settlement amount, have settled." *Id.*

[29] A genuine issue of material fact precludes the entry of summary judgment for Standard Fire on the question of whether it breached its duty to exercise good faith and fair dealing toward the Hummels when Standard Fire allowed the November 2018 settlement offer to lapse. As the designated evidence makes clear, in the November 2018 settlement offer Baldwin offered to settle with the Hummels for the per-person policy limit of $50,000 in exchange for various representations and waivers. At the time of that offer, both Standard Fire and Hummels' counsel had already concluded that the Hummels' personal liability to Baldwin would exceed $50,000. Thus, any reasonably prudent person facing the potential total exposure of Baldwin's claim would have accepted the November 2018 settlement offer.

[30] Nonetheless, Standard Fire did not accept the offer and instead allowed the offer to expire. In doing so, Standard Fire appeared to give no consideration to the Hummels' interests. Instead, Standard Fire emphasized its own concern to proceed by way of the interpleader action "in order to protect the [per-collision] policy limit of $100,000." Appellants' App. Vol. 34, p. 44. And, as a result of Standard Fire's decision, the Hummels eventually conceded to being personally liable to Baldwin for $700,000.

[31] Standard Fire's argument on appeal in support of its decision to not accept the November 2018 settlement offer doubles down on its own interests without any consideration of its obligation to exercise good faith and fair dealing to its insureds. Standard Fire emphasizes how rational the interpleader action was from its point of view and how reasonable it is for the insurer to be concerned

about per-collision policy limits. We have no qualms with Standard Fire's assessment of its own interests. It was Standard Fire's apparent disregard for the interests of its insureds that establishes a genuine issue of material fact on this issue and precludes the entry of summary judgment. Accordingly, we reverse the trial court's entry of summary judgment for Standard Fire on the issue of whether it exercised good faith and fair dealing toward the Hummels.

## 3. The designated evidence precludes the entry of summary judgment for Standard Fire on the issue of whether it acted in bad faith toward the Hummels.

[32] Apart from whether Standard Fire breached its duty to exercise good faith and fair dealing toward the Hummels, Baldwin also alleged that Standard Fire affirmatively acted in bad faith toward them. As our Supreme Court explained in *Hickman*:

> the recognition of an independent tort for the breach of the insurer's obligation to exercise good faith provides the tort upon which punitive damages may be based. Nonetheless, just as a jury's determination that a claim was, in retrospect, incorrectly denied is not sufficient to establish a breach of the duty to exercise good faith, proof that a tort was committed is not sufficient to establish the right to punitive damages.

> The standard for awarding punitive damages for the commission of a tort remains unchanged. Punitive damages may be awarded only if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the

defendant and to deter it and others from like conduct in the future."

622 N.E.2d at 520 (citations omitted; alteration original to *Hickman*).

[33] Our case law refers to the attempt to obtain punitive damages stemming from a breach of the duty to exercise good faith and fair dealing as an attempt to recover for the insurer's "bad faith." *E.g.*, *Johnston v. State Farm Mut. Ins. Co.*, 667 N.E.2d 802, 804-05 (Ind. Ct. App. 1996), *trans. denied*. As we summarized in *Johnston*: "Bad faith amounts to more than bad judgment or negligence. Bad faith involves the conscious doing of wrong because of dishonest purpose or moral obliquity." *Id.* at 805 (citations omitted). Thus, whether an insurer breached its obligation to exercise good faith and fair dealing toward its insured is one legal question; whether any such breach involved conscious wrong-doing to establish an award of punitive damages is a separate question.[7] *See Hickman*, 622 N.E.2d at 520.

[34] On this issue, Baldwin's designated expert affidavit readily demonstrates a genuine issue of material fact. As Baldwin's expert summarized:

---

[7] Contemporaneous with his motion for summary judgment, Baldwin moved to strike Standard Fire's asserted affirmative defense that it had relied on the advice of counsel in its decision to file the interpleader action. Although Baldwin argues on appeal that the trial court abused its discretion when it denied his motion to strike, we cannot say that any error here is reversible. The premise of the parties' arguments on the purported affirmative defense is whether a claim of bad faith may be predicated upon the filing of an interpleader action alone. But, as noted above, bad faith seeks to assess punitive damages for the breach of a duty. The filing of an interpleader action, without more, is not a breach of any express or implied duty of an insurer to its insureds. Accordingly, any error in the trial court's denial of Baldwin's motion to strike is harmless as Baldwin's bad-faith claim cannot stand solely on the filing of the interpleader action.

18. Despite the fact Standard Fire had determined the Baldwin and Hopkins injury claims would exceed the available [per-person] policy limits, and that [Hummels' counsel] had independently declared that Mr. Baldwin's damages would likely fall within the range of $75,000.00 to $100,000.00, Standard Fire failed to accept the [November 2018 settlement offer], thereby exposing [the Hummels] to a damage verdict which everyone evaluating the claim to that point in time agreed would substantially exceed the insurance policy limits . . . .

\* \* \*

20. The insurance claim file/claim file notes do not contain any evidence or reference to an evaluation or consideration by Standard Fire as to the costs/benefits to the insureds in deciding to accept or reject Mr. Baldwin's settlement demand. . . .

\* \* \*

23. Rather than accept the [November 2018 settlement offer], Standard Fire elected to file [the interpleader action] with the apparent goal to (1) deposit the $100,000.00 aggregate bodily injury policy coverage limit with the trial court; (2) "walk away" from two known substantial liability insurance claims and a possible third . . . injury claim; (3) defer to the trial court with respect to the apportionment of the $100,000.00 aggregate monies among the potential claimants; and (4) terminate any further responsibilities for the defense of the pending Baldwin litigation, as well as avoiding defending any other lawsuits which might thereafter be filed.

24. While the interpleader action would provide advantages and economies to Standard Fire . . . , the immediate adverse effect upon the Hummels was clear and obvious in that the settlement offer by Baldwin, which would have terminated the possibility of

uninsured claims by Baldwin against the Hummels, was, as warned, immediately withdrawn. Consequently, since the interpleader action initiated by Standard Fire would have no effect upon Baldwin's ability to continue his claims against [the Hummels] to seek sums far exceeding, without limit, the underlying insurance coverage provided through Standard Fire, the obvious result was entirely to the benefit of Standard Fire and extremely harmful, with no advantage whatsoever, to the insureds . . . .

25. It is obvious, or can be strongly inferred, that the choice of Standard Fire to pursue an interpleader action in lieu of accepting the settlement offer by [Baldwin] was solely for the purpose of terminating and eliminating any further expense on the part of Standard Fire . . . under circumstances in which it was clearly known that eventually the bodily injury insurance coverage policy limits would be paid on both of those claims [Baldwin's and Hopkins's] . . . .

26. . . . [S]uch actions on the part of Standard Fire were solely intended to benefit the insurance carrier and did not fully, or even properly, consider the adverse effects which such a chosen path would impose upon [the Hummels] as the insureds. *Placing the carrier's interests above those of the insureds in such a manner is the very definition and epitome of bad faith in the insurance industry.*

Appellants' App. Vol. 39, pp. 25-26, 28-29 (emphasis added). Accordingly, we reverse the trial court's entry of summary judgment for Standard Fire on Baldwin's claim that Standard Fire acted in bad faith toward the Hummels when Standard Fire allowed the November 2018 settlement offer to lapse.

## 4. The Hummels' $700,000 settlement with Baldwin is not binding on Standard Fire, but it may be some evidence of possible damages.

[35] We thus turn to Baldwin's motions for summary judgment, beginning with his attempt to have Standard Fire "judicially estopped" from challenging the Hummels' $700,000 settlement with Baldwin. Appellants' Hummel Br. at 33. According to Baldwin, an insurer must be bound by a judgment between its insured and the injured party where the insurer "had notice and opportunity to control the proceedings." *Id.* (citing *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 900 (Ind. Ct. App. 1992), *trans. denied*).

[36] But the Hummels entered into the $700,000 settlement with Baldwin *without* notice to Standard Fire. Indeed, in a prior offer, Standard Fire had rejected Baldwin's offer to settle the Hummel lawsuit for that amount. The Hummels then separately and confidentially entered into the settlement along with the assignment of their putative claims against Standard Fire. We conclude that, in such circumstances, the insured's actual settlement amount is not binding on the insurer.

[37] We also note that Standard Fire asserts that the Hummels breached the policy when they settled with Baldwin in April 2021 without Standard Fire's consent, and this alleged breach relieved Standard Fire of any obligations from that point forward. But, as explained in part 2 above, the question of who breached first is an open one. And if the fact-finder concludes that Standard Fire breached the contract first in November 2018, the Hummels would have been within their

rights to treat the contract as being at an end. *See, e.g.*, *Fischer v. Heymann*, 12 N.E.3d 867, 872 (Ind. 2014).

[38]     As the issue of damages is likely to recur on remand, we also note that the $700,000 judgment may be admissible as evidence of the Hummels' damages should the fact-finder conclude that Standard Fire breached its duty to exercise good faith and fair dealing toward the Hummels. The question here would be whether the $700,000 was a reasonable assessment of Baldwin's compensatory damages, e.g., his medical expenses and lost wages, due to Tommi's negligence, which, in turn, Standard Fire exposed the Hummels to by way of a breach of its obligation to exercise good faith and fair dealing toward the Hummels. But, with that guidance aside, we express no opinion on the resolution of that question.

## 5. The trial court's award of prejudgment interest to Baldwin in the Hummel lawsuit is also not binding on Standard Fire.

[39]     In his motion for summary judgment in the interpleader action, Baldwin also sought to have Standard Fire held immediately liable for the $86,378 in prejudgment interest awarded to him by the trial court in the Hummel lawsuit following the entry of that final judgment. But Standard Fire was not a party in the Hummel lawsuit, and Baldwin cites no authority for his apparent proposition that a nonparty can be held responsible for the payment of a judgment, to say nothing of his attempt to enforce part of the Hummel lawsuit judgment in the instant interpleader action. We therefore conclude that the trial court did not err when it denied Baldwin's motion for summary judgment on

this issue. And we express no opinion on whether an award of prejudgment interest in the instant action might be appropriate once a final judgment has been determined.

## 6. The trial court properly entered summary judgment for Standard Fire on Baldwin's claims assigned by McCarty's Estate.

[40] Last, we agree with the trial court that summary judgment for Standard Fire on Baldwin's assigned claims by McCarty's Estate was proper. In the McCarty lawsuit, Baldwin alleged in his complaint that McCarty was either in a business relationship with the Hummels or had negligently entrusted the vehicle to the Hummels. Thus, Baldwin continues, the allegations in his complaint were, by themselves, sufficient to invoke Standard Fire's duty to defend McCarty under the language of the policy.

[41] But Indiana law does not require insurers to disregard known facts and instead strictly follow the complaint in determining whether it has a duty to defend a named defendant. We considered this question "well settled" more than thirty years ago, stating: "The law in this jurisdiction is well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend." *Metzler*, 586 N.E.2d at 901; *see also Barnard v. Menard, Inc.*, 25 N.E.3d 750, 760 (Ind. Ct. App. 2015) (reiterating that an insurer's duty to defend is determined not only from the allegations within

the complaint but also from "those facts known or ascertainable by the insurer after reasonable investigation").[8]

[42] And here, it is not disputed that, prior to Baldwin filing his complaint against McCarty, Standard Fire's own investigation into the accident had revealed that the vehicle was the Hummels' vehicle, that Tommi was not intoxicated at the time of the accident, and that McCarty was not in any kind of business relationship with the Hummels. That is, the allegations of the complaint notwithstanding, the facts known to Standard Fire based on its own investigation demonstrated that McCarty was not an insured under the policy. Standard Fire therefore had no duty to defend McCarty, and the trial court properly entered summary judgment for Standard Fire on Baldwin's claims assigned by her Estate.

## Conclusion

[43] For the above-stated reasons, we affirm the trial court's entry of summary judgment for Standard Fire on Baldwin's claims assigned by the Hummels on the question of whether Standard Fire breached its duty to defend the Hummels. We also affirm the trial court's entry of summary judgment for Standard Fire on Baldwin's claims assigned by McCarty's Estate. We also

---

[8] Baldwin asserts that these cases stand for the proposition that an insurer must accept the facts alleged in a complaint as true for purposes of the duty to defend but may proceed under a reservation of rights based on its own investigation. Baldwin is not correct. While that may well be a sound practice, our case law makes clear that an insurer may decline to defend after considering both the allegations and the known facts, but it does so "at its own peril." *Metzler*, 586 N.E.2d at 901.

affirm the trial court's denial of Baldwin's motions for summary judgment. However, we reverse the trial court's entry of summary judgment for Standard Fire on Baldwin's claim that Standard Fire breach its obligation to exercise good faith and fair dealing toward the Hummels as well as Baldwin's claim that Standard Fire acted in bad faith toward the Hummels. As to those claims, we remand for further proceedings consistent with this opinion.

[44] Affirmed in part, reversed in part, and remanded for further proceedings.

Vaidik, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Michael E. Simmons
Hannah K. Brady
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

William K. McVisk
Todd S. Schenk
Tressler LLP
Chicago, Illinois